38644. MULLIS et al. v. SOUTHERN COMPANY SERVICES, INC. et. al.

JORDAN, Chief Justice.

This case concerns the construction and constitutionality of Code Ann. §§ 3-1006-1011[1] which insulate architects, engineers, contractors, and all other parties participating in the design, planning, supervision, or construction of an improvement to real property from liability for injuries to persons or property occurring more than eight years after the substantial completion of such an improvement and resulting from the negligent designing, planning, supervision, or construction of such an improvement.

On November 6, 1977, one of the appellants, Marion Mullis was working at Georgia Power Company's Plant Harllee Branch. On this day, Mr. Mullis was assigned the task of painting some bushing caps on top of an air circuit breaker (ACB 804). Due to an alleged misunderstanding with his foreman, Mr. Mullis thought that ACB 804 was de-energized; however, it was not, and Mullis while on top of the cabinet of ACB 804, made contact with live "bushing caps" and was shocked and severely burned.

Mr. Mullis and his wife filed suit in Fulton Superior Court against Southern Company, the appellee, alleging that Southern Company negligently designed the electrical distribution system of Plant Harllee Branch, in particular ACB 804, and that this negligent design was a proximate cause of Mr. Mullis' injuries.

In defense, Southern Company moved for summary judgment on the following grounds: (1) that the electrical distribution system of Plant Harllee Branch was an "improvement to real property" within the meaning of Code Ann. § 3-1006; (2) that the construction of the electrical distribution system and of Plant Harllee Branch was completed on or before June 27, 1969; (3) that the injuries allegedly suffered occurred on or around November 6, 1977; and (4) that since this action was instituted on October 19, 1979, more than ten years

---

[1] Code Ann. § 3-1006 provides as follows: "No action to recover damages (1) for any deficiency in the survey or plat, planning, design, specifications, supervision or observation of construction or construction of an improvement to real property, (2) for injury to property, real or personal, arising out of any such deficiency, or (3) for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any person performing or furnishing the survey or plat, design, planning, supervision or observation of construction, or construction of such an improvement more than eight years after substantial completion of such an improvement."

after the substantial completion of the improvements to real property, that the actions were barred by Code Ann. § 3-1006. In response, the Mullises raised several constitutional challenges to Code Ann. § 3-1006.

The trial court granted Southern Company's motion for summary judgment and ruled that the Mullises' constitutional challenges to Code Ann. § 3-1006 were meritless. The Mullises appeal these rulings.

We first address the Mullises' constitutional challenges to the statute.

1. The Mullises contend that Code Ann. §§ 3-1006 et seq. violate Article III, Section VII, Paragraph IV of the Constitution of Georgia of 1976 (Code Ann. § 2-1304) which provides that "No law shall pass which refers to more than one subject matter, or contains matter different from what is expressed in the title thereof."

" 'In interpreting Code Ann. § 2-1304, this court has consistently noted that "It was never intended that the substance of the entire act should be set forth in the caption. It was not contemplated that every detail stated in the body should be mentioned in the caption. If what follows after the enacting clause is definitely related to what is expressed in the title, has a natural connection, and relates to the main object of legislation, and is not in conflict therewith, there is no infringement of the constitutional inhibition." *Cady v. Jardine,* 185 Ga. 9, 10-11 (193 SE 869) (1937).' *Frazer v. City of Albany,* 245 Ga. 399, 401 (265 SE2d 581) (1980)" *Devier v. State,* 247 Ga. 635 (2) (277 SE2d 729) (1981).

We find that Code Ann. § 3-1006 definitely relates to and has a natural connection with the main object of the legislation and with what is expressed in the title of Chapter 3-10. Code § 3-1006, while it can bar a cause of action before it accrues, is nevertheless a limitation on the right to bring an action, and it satisfies a traditional purpose of a statute of limitations which is to put an end to stale claims which are unlikely to be based upon competent evidence for one reason or another. See, Howell v. Burk, 568 P2d 214, 218 (N. M. 1977).

2. The appellants also contend that Code Ann. § 3-1006 unconstitutionally denies them their right of access to the courts in violation of Code Ann. § 2-109; however, this attack was not raised below and will not be considered on appeal. *Pitts v. G.M.A.C.,* 231 Ga. 54 (199 SE2d 902) (1973).

3. The appellants next contend that Code Ann. § 3-1006 violates Article I, Section II, Paragraph VII of the Georgia Constitution of 1976 (Code Ann. § 2-207) in that § 3-1006 unreasonably and arbitrarily treats architects, engineers, and contractors who perform work on improvements to real estate differently from manufacturers

who make parts used by the former group and from owners or tenants who are in actual possession or control of the real property when the injury occurs. For this reason, the Mullises also contend that § 3-1006 violates the "equal protection" clauses of the Georgia and United States Constitutions. (Code Ann. § 2-203 and the Fourteenth Amendment).

We find this argument to be without merit and find no violation of Code Ann. § 2-207, or Code Ann. § 2-203 or the Fourteenth Amendment to the United States Constitution.

We find that the separate classification and treatment of architects, engineers, and contractors by Code Ann. § 3-1006 from owners, tenants, and manufacturers is reasonable and not arbitrary.[2]

First, there is a valid distinction between the groups "performing or furnishing the . . . design, planning, supervision or observation of contruction, or construction of such an improvement," and a person or group in control or possession as owner, tenant, or otherwise of such an improvement. After the improvement to real property is turned over to the owner, "there exists the possibility of neglect, abuse, poor maintenance, mishandling, improper modification, or unskilled repair of an improvement . . . by the owner, lessor, or tenant." Burmaster v. Gravity Drainage, 366 S2d 1381, 1385 (La. 1978). See, also, Reeves v. Ille Electric Co., 551 P2d 647, 651 (Mont. 1976); Howell v. Burke, 568 P2d 214, 220, supra; and Freezer Storage, Inc. v. Armstrong Cork Co., 382 A2d 715, 718 (Pa. 1978). After acceptance by the owners, the architects, engineers, and contractors do not ordinarily have access to the improvement so as to guard against such neglect or mishandling. In addition, there is a difference between the problems an owner, lessor, or tenant would have in defending such claims and those problems that an architect, engineer, or contractor would have. For instance, architectural plans may have been discarded or persons individually involved in the construction project may be deceased or

---

[2] For convenience, we are referring to the beneficiaries of this legislation as architects, engineers, and contractors; however, the favored class could be much larger as the statute includes "any person performing or furnishing the survey or plat, design planning, supervision or observation of construction or construction of such an improvement. . . ." In this case, we make no attempt to delineate the potential beneficiaries. See, Rosenberg v. Town of N. Bergen, 293 A2d 662, 668 (N. J. 1972). In addition, we find no cases deciding whether suppliers or manufacturers of parts fall within the scope of this statute; however, we will address the Mullises' arguments assuming arguendo that suppliers and manufacturers are not within the protected class. See, Freezer Storage, Inc. v. Armstrong Cork Co., 382 A2d 715, 719 (Pa. 1978), and Burmaster v. Gravity Drainage, 366 S2d 1381, 1386 (La. 1978).

difficult to locate. See Howell v. Burke, supra, p. 220. For these reasons, we find that there is a reasonable legislative distinction between the owner, tenants, or lessor, who have control of the property, and architects, engineers, and contractors. See, Burmaster v. Gravity Drainage, supra; Reeves v. Ille Electric Company, supra; and Howell v. Burke, supra, for decisions reaching the same result.

In addition, there is also a valid distinction between architects, engineers, and contractors involved in the construction of an improvement for real property and the manufacturers who produce parts for such a project. "Suppliers and manufacturers, who typically supply and produce components in large quantities, make standard goods and develop standard processes. They can thus maintain high quality control standards in the controlled environment of the factory. On the other hand, the architect or contractor can pretest and standardize construction designs and plans only in a limited fashion." Burmaster v. Gravity Drainage, supra, p. 1386. See, also, Freezer Storage, Inc. v. Armstrong Cork Co., supra, p. 719. This difference in the work products and work conditions of material-men or manufacturers and architects, engineers, and contractors, necessarily makes it more difficult for the latter group to prevent and find defects. See, Burmaster v. Gravity Drainage, supra, p. 1386; and Howell v. Burke, supra, p. 220. We find that these differences form a reasonable basis on which the General Assembly could distinguish between the groups and decide that manufacturers and materialmen should not be afforded the same protection as architects, engineers, and contractors.

4. The final issue concerns the construction of Code Ann. § 3-1006. The appellants contend that the trial court erred in construing the "improvements to the real property language" to encompass the electrical distribution system and ACB 804.

It is uncontroverted that the electrical system, of which ACB 804 is a part, was designed by Southern Company and was completed in 1969. Consequently, if the electrical distribution system and ACB 804 are both found to be "improvements to real property," the Mullises actions would be barred by Code Ann. § 3-1006.

Code Ann. § 3-1006 is in derogation of the common law and must therefore be strictly construed. See, *Redwine v. Arvaniti,* 83 Ga. App. 203, 206 (63 SE2d 222) (1951), and Pacific Indemnity Co. v. Thompson-Yaeger, Inc., 260 NW2d 548 (1) (Minn. 1977). However, we must give the statute its plain meaning, and in doing so, we turn to a "commonsense interpretation" of the words "improvements to real property" which has been adopted by many courts. See, Pinneo v. Stevens Pass, Inc., 545 P2d 1207 (1), (2) (Wash. 1976); Allentown Plaza v. Suburban Propane Gas Corp., 405 A2d 326 (1-3) (Md. 1979);

Pacific Indemnity Co. v. Thompson-Yeager, Inc., *supra*, p. 554 (1, 2); and Kallas Millwork Corp. v. Square D Co., 225 NW2d 454, 456 (Wis. 1975).

Several factors have arisen as being important to a commonsense analysis of what constitutes an improvement to real property. These factors are (1) is the improvement permanent in nature; (2) does it add to the value of the realty, for the purposes for which it was intended to be used; (3) was it intended by the contracting parties that the "improvement" in question be an improvement to real property or did they intend for it to remain personalty. See, Pinneo v. Stevens Pass, Inc., *supra*, p. 1208-1210; Allentown Plaza v. Suburban Propane Gas Corp., *supra*, p. 331-333; Pacific Indemnity Co. v. Thompson-Yeager, Inc., *supra*, p. 554; and Kallas Millwork Corp. v. Square D Co., *supra*, p. 456.

The Plant's electrical system clearly qualifies as an improvement to real property. Its permanence cannot be disputed; it consists of a complex system of buildings and electrical components (e.g. transformers, air circuit breakers, wiring, etc.) covering acres and acres of land. In addition, the Plant's electrical system is essential to the purpose of the realty (i.e., the generation and distribution of electrical power), and as a result, clearly enhances the value of the realty.

The next question is whether air circuit breaker 804 constitutes an improvement to real property. The appellants allege that Southern Company negligently designed this component's function within the Plant's electrical system, and they contend that ACB 804 itself is not an improvement to realty. We disagree with this argument. The issue is whether a component of a system which is definitely an improvement to real property is an improvement to real property itself. However, to artificially extract each component from an improvement to real property and view it in isolation would be an unrealistic and impractical method of determining what is an improvement to real property. Frequently, as in this case, an improvement to real property is going to consist of a complex system of components.

Consequently, we find that if a component is an essential or integral part of the improvement to which it belongs, then it is itself an improvement to real property. In this case, ACB 804 is an essential part of the Plant's electrical system; it is not an optional frill unnecessary to the functioning of that system. It was a part of the original contract and design concerning the system.

The trial court did not err in granting appellee's motion for summary judgment.

*Judgment affirmed. All the Justices concur, except Smith and*

*Gregory, JJ., who dissent.*

DECIDED OCTOBER 27, 1982 — REHEARING DENIED NOVEMBER 16, 1982.

Cashin & Davis, Harry L. Cashin, Jr., William T. McKenzie, for appellants.

Troutman, Sanders, Lockerman & Ashmore, Robert L. Pennington, Kevin C. Greene, Freeman & Hawkins, J. Bruce Welch, for appellees.

GREGORY, Justice, dissenting.
I dissent to Division 4 of the majority opinion. We have already given the statutory language in question, "construction of an improvement to real property" a narrow construction. *Turner v. Marable-Pirkle, Inc.,* 238 Ga. 517, 519 (233 SE2d 773) (1977). There we held: "The erection of a power pole, and the placing of the necessary equipment thereon, for the transmission of electricity is not such an improvement to real estate as was contemplated by the 1968 statute. And, as in this case, the mere changing or replacement of such equipment on a pole already erected is not an improvement to realty pursuant to this statute." The actual improvement which had been made in the *Turner* case was the removal of the transformers, fuses, and other hardware on the poles so that the system would have a greater capacity for electricity. If the replacement of those devices was not such an improvement to realty as to bring the statute in to play, neither is the placement of a circuit breaker in this system such an improvement to realty as to bring the statute into play.
I am authorized to state that Justice Smith joins in this dissent.