A99A0180. DONALDSON et al. v. DEPARTMENT OF
TRANSPORTATION.
(511 SE2d 210)

ELDRIDGE, Judge.

At 5:45 p.m. on Thursday, April 25, 1996, Mary A. Donaldson, plaintiff-appellant, was a passenger in a motor vehicle traveling north on State Highway 53 in Winder, Georgia, which vehicle was struck by another vehicle coming south on State Highway 11 at the intersection of the two roads. This was a "Y" intersection called a "branch intersection." Highway 53 branched to the northwest, while Highway 11/211 branched to the northeast. The base had two northbound lanes for Highways 11 and 53 and one southbound lane for 11 and 53 at the intersection. Normally, there were yield markings and signs for northbound traffic on Highway 53 to yield to southbound traffic on Highway 11, which had the right-of-way. The center northbound lane for Highway 53 previously had a yield marking on the roadway before the intersection, while the northbound curb lane for Highway 11 turned to the northeast at the intersection.

On March 12, 1996, the Georgia Department of Transportation ("DOT") began a resurfacing project on Highways 11 and 53. On April 17, 1996, when the highway contractor ceased repaving and secured for the day, there were no yield signs or control devices left in place to control the intersection. The collision at issue in this case occurred at

the intersection where the resurfacing had obliterated any surface markings. Plaintiffs, Mrs. Donaldson and her husband, Jack David Donaldson, sued DOT for negligently failing to mark the intersection during construction at the intersection, proximately causing the collision. The case was tried to a jury, and on November 5, 1997, the jury returned a verdict for DOT. The plaintiffs moved for a new trial, which was denied. Plaintiffs timely appeal.

1. Plaintiffs' first enumeration of error is that the trial court erred in failing to grant plaintiffs' motion for directed verdict on the issue of negligence per se. We do not agree.

(a) OCGA § 32-6-50 (b) reads in pertinent part "[i]n conformity with its uniform regulations, the department [(DOT)] shall place and maintain, or cause to be placed and maintained, such traffic-control devices upon the public roads of the state highway system as it shall deem necessary to regulate, warn, or guide traffic[.]" Plaintiffs contend that this statutory provision is mandatory, creating negligence per se for DOT's failure to maintain properly traffic control signage at this intersection during construction.

" 'Generally, statutes directing the mode of proceeding by public officers, designed to promote method, system uniformity, and dispatch in such proceeding, will be regarded as directory if a disregard thereof will not injure the rights of parties, and the statute does not declare what result shall follow non-compliance therewith, nor contain negative words importing a prohibition of any other mode of proceeding than that prescribed.' . . . 'When the words are affirmative, and relate to the manner in which power or jurisdiction vested in a public officer or body is to be exercised, and not to the limits of the power or jurisdiction itself, they may and often have been construed to be directory.' " (Citations omitted.) *Southern Security Co. v. American Discount Co.*, 55 Ga. App. 736, 740 (191 SE 258) (1937); see also *Jordan v. State*, 223 Ga. App. 176, 182 (2) (477 SE2d 583) (1996).

OCGA § 32-6-50 (b) was enacted by the General Assembly as part of the Uniform Act Regulating Traffic On Highways to control use of the state roads by DOT or by state-wide traffic laws. Ga. L. 1953, Nov.-Dec. Sess., pp. 556, 568-569, §§ 31-32. Non-compliance by DOT does not exact a penalty under the statute and produces no injury to individual rights, i.e., rights of parties. The express language of the statute delegates discretionary powers to DOT to promulgate uniform regulations governing traffic control devices and to carry out its discretion to place control devices in a particular location. OCGA § 32-6-50 (a), (b). Thus, no standard of non-discretionary conduct is mandated that can be the basis for negligence per se.

(b) Plaintiffs contend that the Manual On Uniform Traffic Control Devices ("MUTCD") establishes clear standards for negligence per se. However, the MUTCD was not tendered into evidence at trial

and is not part of the record on appeal, although it was incorporated by reference as part of the repaving contract, which itself was not tendered. However, two pages of the MUTCD, § 150.01, Exhibit P-6, were admitted into evidence, but not included in the record on appeal.

Volume 10 of the Official Compilation of the Rules & Regulations of the State of Georgia, Part 2, Chapter 672 et seq., Rules of the State Department of Transportation contains no rules or regulations governing placement of traffic control devices, either permanently or temporarily, during construction or resurfacing. Neither do such DOT regulations adopt by reference the MUTCD. Unlike the regulations in *Walter v. Orkin Exterm. Co.*, 192 Ga. App. 621, 622-623 (1) (385 SE2d 725) (1989), MUTCD has not been published by authority by the Secretary of State as State-adopted regulations and therefore, does not have the force of law.

Through the Code of Federal Regulations, the MUTCD can be established applicable standard of care under proper facts, i.e., Federal-aid highways, and this would authorize judicial notice to be taken of it upon proper request. 23 CFR Subpart F, § 655.603, pp. 251-252, reads: "*Standards* — (a) *National MUTCD.* The MUTCD approved by the Federal Highway Administrator is the national standard for all traffic control devices installed on any street, highway, or bicycle trail open to public travel in accordance with 23 U.S.C. 109(d) and 402(a). The national MUTCD is specifically approved by the FHWA for application on any highway project in which Federal highway funds participate and on projects in federally administered areas where a Federal department or agency controls the highway or supervises the traffic operations. (b) *State or other Federal MUTCD.* (1) Where State or other Federal agency MUTCDs or supplements are required, they shall be in substantial conformance with the national MUTCD. Changes to the national MUTCD issued by the FHWA shall be adopted by the States or other Federal agencies within 2 years of issuance. The FHWA Regional Administrator has been delegated the authority to approve State MUTCDs and supplements. . . . (d) *Compliance* — (1) *Existing highways.* Each State, in cooperation with its political subdivisions, and Federal agencies shall have a program as required by Highway Safety Program Standard Number 13, Traffic Engineering Services (23 CFR 1204.4) which shall include provisions for the systematic upgrading of substandard traffic control devices and for the installation of needed devices to achieve conformity with the MUTCD. (2) *New or reconstructed highways.* Federal-aid projects for the construction, reconstruction, resurfacing, restoration, or rehabilitation of streets and highways shall not be opened to the public for unrestricted use until all appropriate traffic control devices, either temporary or permanent, are installed

and functioning properly. Both temporary and permanent devices shall conform to the MUTCD. (3) *Construction area activities*. All traffic control devices installed in construction areas using Federal-aid funds shall conform to the MUTCD. Traffic control plans for handling traffic and pedestrians in construction zones and for protection of workers shall conform to the requirements of 23 CFR part 630, subpart J, Traffic Safety in Highway and Street Work Zones." "Material Approved for Incorporation by Reference . . . — The Director of the Federal Register has approved under 5 U.S.C. 552(a) and 1 CFR Part 51 the incorporation by reference of the following publications. . . . Federal Highway Administration . . . Manual on Uniform Traffic Control Devices for Streets and Highways, FHWA." 23 CFR pp. 497-498.

While the MUTCD was published by authorization under the Code of Federal Regulations, so that judicial notice can be taken of it, there was no evidence that this was a Federal-aid highway so that the MUTCD would be applicable and have the force of law in this case. See *Walter v. Orkin Exterm. Co.*, supra at 622-623 (1). Had the evidence shown this to be a Federal-aid road, then the plaintiffs could have requested that the trial court take judicial notice of the MUTCD. However, as a practical matter, they would still have to tender a copy of the MUTCD to perfect the record so that it would be before the trial court and this Court, even though judicial notice could be taken of it. This is because the MUTCD is only part of the CFR by reference and available from the Federal Highway Administration. But, absent a request or prior notice to the parties, the trial court is prohibited from taking judicial notice of the MUTCD. In this case, there was no request for judicial notice to be taken of the MUTCD by any party. See *Graves v. State*, 269 Ga. 772 (504 SE2d 679) (1998).

The DOT project engineer and plaintiffs' expert witness identified the MUTCD and testified regarding the applicable standards to establish the minimum standard of ordinary care, but this testimony failed to establish such standards as mandatory regulations for purposes of negligence per se. OCGA § 32-6-50 (a) directs that "[i]nsofar as practical, with due regard to the needs of the public roads of Georgia, such uniform regulations shall conform to the recommended regulations as approved by the American Association of State Highway and Transportation Officials." While plaintiffs' expert testified that the MUTCD was promulgated and published by the Federal Highway Administration with the assistance of traffic engineers from across the country, he did not testify that this was approved by the American Association of State Highway & Transportation Officials so as to bring it within the statute. Thus, the MUTCD had to be proved at trial.

Proof of law or regulations, other than the Official Code of Georgia and state regulations promulgated under the Administrative Procedures Act and published by the Secretary of State as the Official Regulations of the State of Georgia, must be pled and proved under OCGA § 9-11-43 (c), because judicial notice cannot be taken of rules, regulations, and ordinances not authorized for publication. See generally OCGA §§ 50-13-2 (1); 50-13-3; 50-13-4; 50-13-5; 50-13-7; 50-13-8; *Oliver v. City of Macon*, 241 Ga. 306 (245 SE2d 280) (1978); *Poole v. State*, 229 Ga. App. 406, 409 (2) (494 SE2d 251) (1997); *Joel Properties v. Reed*, 203 Ga. App. 257 (416 SE2d 570) (1992); *Beall v. Dept. of Rev.*, 148 Ga. App. 5 (251 SE2d 4) (1978). The governmental rules, regulations, and ordinances stand in the same status as private acts, so that they must be pled and proved by evidence. *Childers v. Richmond County*, 266 Ga. 276, 277 (467 SE2d 176) (1996); *Mayor &c. of Savannah v. TWA, Inc.*, 233 Ga. 885, 886-887 (214 SE2d 370) (1975).

OCGA § 9-11-43 (c) reads "[a] party who intends to raise an issue concerning the law of another state or of a foreign country [or governmental rule not published by state authority] shall give notice in his pleadings or other reasonable written notice. The court, in determining such law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the rules of evidence. The court's determination shall be treated as a ruling on a question of law."

"We therefore conclude that notice of intent to rely on foreign law is required before a *party* can establish such law in accordance with any of the three statutory methods or place a duty on the trial court to judicially recognize foreign law as published by authority." (Emphasis in original.) *Samay v. Som*, 213 Ga. App. 812, 814 (446 SE2d 230) (1994). "There exist three separate Code sections (OCGA §§ 9-11-43 (c); 24-1-4; and 24-7-24) pertaining to the methods by which foreign law [or state or local government rules] can be judicially determined. [Cit.]" Id.

Plaintiffs failed to plead in the complaint the MUTCD or any other DOT regulations to give notice to DOT, although DOT did not object on such ground. *Samay v. Som*, supra at 814-815 (2); *Plant v. Trust Co.*, 164 Ga. App. 387 (297 SE2d 37) (1982); *Ramseur v. American Mgmt. Assn.*, 155 Ga. App. 340, 341-342 (2) (270 SE2d 880) (1980); *Souchak v. Close*, 132 Ga. App. 248, 250-251 (1) (207 SE2d 708) (1974). Thus, such evidence would be subject to exclusion, but DOT waived any objection by failing to raise that objection timely.

Plaintiffs nonetheless failed to tender a copy of the MUTCD into evidence, even though it was evidence of a minimum standard of care. Thus, the trial court could not determine if the MUTCD created negligence per se; no stipulation as to the MUTCD was made. *Beall v. Dept. of Rev.*, supra at 8. While portions of the MUTCD were testified

to by expert witnesses sufficient to establish a minimum standard of care for *ordinary* negligence purposes, such testimony was insufficient for the trial court or this Court to determine that such portion of the MUTCD created negligence per se. See OCGA § 9-11-43 (c); *Ramseur v. American Mgmt. Assn.*, supra at 340. Thus, the trial court had no evidence of the regulations upon which to base a determination that the DOT's omission constituted negligence per se. The MUTCD must be tendered into evidence to prove the standard of care determined by the regulations and to determine if the plaintiff came within the purpose for the regulations and scope of protection of the regulations. *Isom v. Schettino*, 129 Ga. App. 73, 75 (1) (199 SE2d 89) (1973). The MUTCD was properly admissible as evidence of the minimum standard of care by DOT for jury determination of ordinary negligence. See *Dept. of Transp. v. Brown*, 267 Ga. 6, 8 (2) (471 SE2d 849) (1996); *Ballenger Paving Co. v. Gaines*, 231 Ga. App. 565, 567 (1) (499 SE2d 722) (1998); *Dept. of Transp. v. Blair*, 220 Ga. App. 342, 343 (1) (469 SE2d 446) (1996); *Isom v. Schettino*, supra at 75.

Absent sufficient evidence of the MUTCD, the trial court could not proceed to further determine the issues necessary to constitute such provisions as being negligence per se. "A statute [or regulation] may create a duty recognized by law requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks, the breach of which constitutes what is sometimes called 'negligence.' In determining whether the violation of a statute[, regulation,] or ordinance is negligence *per se* as to a particular person, it is necessary to examine the purposes of the legislation and decide (1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm it was intended to guard against." (Citations and punctuation omitted.) *Generali — U. S. Branch v. Southeastern Security Ins. Co.*, 229 Ga. App. 277, 280 (2) (b) (493 SE2d 731) (1997). Thus, the trial court did not err in denying plaintiffs' motion for directed verdict in the absence of proof that the regulations designated the specific acts or omission of DOT negligence per se, that the collision was the harm intended to guard against, and that plaintiffs fall within the class of persons to be protected by the regulations on Federal-aid roads. See *West v. Mache of Cochran*, 187 Ga. App. 365, 369 (2) (370 SE2d 169) (1988).

2. Plaintiffs' second enumeration of error is that the trial court erred in denying their motion for new trial. We do not agree.

" 'A trial judge's denial of a motion for new trial on evidentiary grounds will be reversed on appeal only if there is *no* evidence to support the verdict.' *Estfan v. Poole*, 193 Ga. App. 507, 509 (1) (c) (388 SE2d 373) (1989). 'On appeal, this court must construe the evidence most strongly to support a verdict and judgment, and every presump-

tion and inference must be made in favor thereof." *In the Interest of E. P. N.*, 193 Ga. App. 742, 747 (2) (388 SE2d 903) (1989). Further, it is not the function of an appellate court to weigh the evidence or to judge witness credibility; the jury resolves conflict in testimony and this court will not substitute its judgment for that of the jury." (Citations and punctuation omitted; emphasis supplied.) *Peters v. Davis*, 214 Ga. App. 885, 886 (1) (449 SE2d 624) (1994).

Division 1 disposed of the issue of negligence per se. And, the jury found against the plaintiffs on the issue of whether the omissions by DOT constituted ordinary negligence. Thus, the trial court did not err in denying the motion for a new trial.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED JANUARY 26, 1999 —
RECONSIDERATION DENIED FEBRUARY 11, 1999 —

*Timmons, Haggard & Carney, John W. Timmons, Jr.*, for appellants.

*Thurbert E. Baker, Attorney General, Blasingame, Burch, Garrard, Bryant & Ashley, E. Davison Burch, Kim T. Stephens*, for appellee.