## A01A2315. KULL v. SIX FLAGS OVER GEORGIA II, L.P.
(564 SE2d 747)

BARNES, Judge.

Joseph Kull appeals the grant of summary judgment to Six Flags Over Georgia II, L.P. He contends that the trial court erred by granting judgment to Six Flags because Six Flags knew that it had an uninspected, deteriorating electrical component in its scoreboard and exercised no care for it; that he exercised care for the safety of his workplace and himself; and that the statute of repose does not bar his claim.

Six Flags, however, denies that it knew of any problems with the

scoreboard's wiring. It also contends that Kull was an independent contractor responsible for ensuring the safety of his workplace, who stood on a metal ladder and inserted metal pliers into a light socket without ensuring that electricity was not flowing to the scoreboard. Therefore, Six Flags contends that Kull's own actions caused his own injuries.

After Kull sued Six Flags, the company moved for summary judgment, contending that it had no notice of the defective wiring in the electrical box that serviced the scoreboard, that Kull failed to ensure the safety of his workplace and failed to exercise ordinary care for his own safety, and that the statute of repose barred his claim. The trial court granted the motion without stating its reasons, and this appeal followed.

1. The standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). A defendant moving for summary judgment based on an affirmative defense, however, may not rely upon an absence of evidence in the record disproving the affirmative defense; in such cases the defendant has the burden of proving its affirmative defenses. *Hess v. Textron Automotive Exteriors*, 245 Ga. App. 264, 266 (536 SE2d 291) (2000). Further, when ruling on a motion for summary judgment, a court must give the opposing party the benefit of all reasonable doubt, and the evidence and all inferences and conclusions therefrom must be construed most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843) (1988). On motions for summary judgment, however, courts cannot resolve the facts or reconcile the issues. *Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 695 (288 SE2d 49) (1981). When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997).

2. If the facts were as simple as Six Flags portrays them, we would have reached a different result. Instead, as discussed more fully below, Kull attempted to remove the broken bulb with insulated pliers while standing on a ladder with rubber feet, while under the impression that a blown fuse had interrupted power to the scoreboard, as fuses are intended to do.

Viewed in favor of Kull, the evidence shows that when he was injured, Kull was an employee of Mahalo Advertising, a company employed by Coca Cola to maintain scoreboards that Coca Cola had donated for use at softball fields. On the day of the incident, Mahalo assigned Kull to change light bulbs on the scoreboard at the Six Flags employees' softball field because Six Flags had reported that some of the lights were out. Kull was escorted to the sign by a Six

Flags employee who turned the power on and told Kull that a lot of bulbs were out.

Kull checked the scoreboard visually for obvious dangers and made sure everything functioned properly. He saw no obvious problems, and things appeared to be functioning properly. His expert testified that nothing would indicate to Kull that the scoreboard was not wired properly. Kull saw that a lot of the lights were out.

To change the light bulbs, Kull climbed an aluminum ladder with rubber feet and, without turning off the electricity to the scoreboard, began changing the burned-out bulbs. After Kull changed a few bulbs, one glass bulb broke from its metal base, which apparently caused a fuse to blow. Because a fuse blowing should interrupt the flow of electricity, Kull assumed the power was off and that he could remove the broken bulb by inserting his metal pliers, with insulated handles, into the metal bulb base and unscrewing the bulb. Unfortunately, however, in this case electricity still flowed to the bulb, and Kull was thrown backward off the ladder. As a result, the fall cracked several vertebrae in his back and one vertebra was partially crushed.

Investigation later revealed that the electric control box to the scoreboard was wired improperly when it was installed years earlier. Thus, a ground lead had 330 volts flowing through it, when it should not have carried any electricity at all.

Kull contends that the trial court erred by granting summary judgment to Six Flags because the company failed to keep the scoreboard safe or warn him of the dangers. Indeed, under our law,

> "[t]he owner or occupier of land is under a duty to invitees to discover and either keep the premises safe from or warn of hidden dangers or defects not observable to such invitees in the exercise of ordinary care." (Citation and punctuation omitted.) *N. L. Indus. v. Madison*, 176 Ga. App. 451, 454 (1) (336 SE2d 574) (1985). An invitee is not obligated to inspect the premises to discover latent defects. Id. at 455 (1).

*Newell v. Great A & P Tea Co.*, 222 Ga. App. 884 (1) (476 SE2d 631) (1996).

Further, merely showing that an injury occurred, without more, does not create a presumption of negligence. Instead, "the true ground of liability is the owner's superior knowledge of the peril and the danger therefrom. As a general rule, a [landowner] has a duty to warn an invitee, such as [Kull], of dangers or defects of which the owner knew or in the exercise of ordinary care it was the owner's duty to know." (Citations omitted.) *Clemmons v. Griffin*, 230 Ga. App. 721, 722 (498 SE2d 99) (1998).

Kull alleges that any electrician inspecting the box would have noticed that it was improperly wired. Further, it was obvious to Kull's expert when he inspected the scoreboard after Kull's injury that the scoreboard had not been maintained for a long time. Based on this evidence, Kull contends that Six Flags had at least constructive notice of the defective wiring, and since he was an invitee on Six Flags' property, Six Flags was liable for his damages. See *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997).

> The principle of equal or superior knowledge is not limited to slip and fall cases, but applies to "static" defective or dangerous conditions on property. While there is no evidence that [Six Flags] here had actual knowledge of the defect in the [wiring], liability may also be based upon constructive knowledge. Constructive knowledge may be established by showing either that: (1) an employee of the proprietor was in the immediate area of the hazard and had the means and opportunity to easily see and remove it; or (2) the proprietor failed to exercise reasonable care in inspecting the premises.

(Citations and punctuation omitted.) *Newell*, supra, 222 Ga. App. at 885-886 (2). As no evidence shows that Six Flags ever inspected the scoreboard or the control box, a question of fact exists whether Six Flags had constructive knowledge of the dangerous condition.

Kull further contends that he was well experienced in replacing light bulbs and that he made sure his workplace was safe. He asserts that his assumption that the blown fuse was sufficient to turn the power off was reasonable. This assertion is supported by Kull's expert who testified that it was reasonable to assume that once the lights on the scoreboard went out, the power was off and that it was "prudent" for Kull to attempt to remove the bulb with the insulated pliers because "he had turned off the power by blowing the fuse in a manner in which I described before where electricians sometimes short things out intentionally to trip the breaker. In this case, the fuse is analogous to the breaker." Also, Mr. Johnson, Kull's co-worker, testified that he would have done the same thing if the fuse had blown while he was changing light bulbs. According to Kull's expert, it is not unusual for experienced electricians to intentionally short out a circuit so that they can work on it. Apparently, in the view of these witnesses, causing a circuit breaker to trip or a fuse to blow in this manner is the same as a homeowner who makes repairs on a circuit by tripping the circuit breaker that controls the flow of electricity to that circuit rather than cutting off the electricity to the entire home.

Johnson also testified that he used the same procedures to

change lights on this type of scoreboard that Kull did because it was quicker to do so. According to Johnson, more that 50 percent of scoreboards do not have a switch on the scoreboard to turn off the power, and turning off the power just to change bulbs would double the job time. Further, Johnson also used an aluminum ladder because the scoreboard was already grounded through its support poles. It was only after Kull's accident that Mahalo started recommending that its personnel use fiberglass ladders.

Johnson also testified that turning off the power to the board would not have necessarily prevented this incident because turning off a switch typically "kills the power to the hot lead" only. Thus, turning off the switch would not have killed the neutral lead, which in this case had 330 volts on it, and in Johnson's opinion that power would have been there whether the fuse was blown or the switch was turned off. Based on all the scoreboards he has worked on, the "switch normally does not disconnect the neutral lead." Johnson also expressed some uncertainty whether the switch on this scoreboard would have turned off the neutral lead and testified that he turned off the power at a breaker box about 50 feet away from the scoreboard after Kull was injured.[1] He further testified that on that visit he replaced a blown fuse.

Based on the testimony of Kull, his expert, and Johnson, we cannot say as a matter of law that Kull either assumed the risk or failed to exercise due care for his own safety. There is no evidence that Kull had any reason to believe that electricity would be flowing to the scoreboard after the fuse blew, and certainly no evidence that anyone had any reason to believe that the scoreboard had been wired so that 330 volts would be flowing through to the scoreboard through a ground lead that should not have carried any current.

3. Six Flags further contends that Kull's actions violated Occupational Safety and Health Act regulations designed to protect him from just such an event. Consequently, Six Flags asserts that Kull was guilty of negligence per se.

Although Six Flags argues that Kull's actions constituted negligence per se because they violated standards established in OSHA and other regulations designed for his protection, Six Flags did not give the written notice required by OCGA § 9-11-43 (c) that it intended to rely on these regulations (*Samay v. Som*, 213 Ga. App. 812, 814 (2) (a) (446 SE2d 230) (1994)) and did not tender copies of the OSHA regulations into the record or ask the trial court to take

---

[1] Some question exists whether another switch was on the scoreboard when Kull was injured. Kull's expert testified that he could not tell when a switch that appeared to have been installed on the pole at the sign was installed or removed. The switch was not available for his examination.

judicial notice of them. See *Donaldson v. Dept. of Transp.*, 236 Ga. App. 411, 414 (1) (511 SE2d 210) (1999). Although the affidavits and deposition testimony by Six Flags' witnesses relying on and referring to the OSHA and other regulations might be sufficient to establish a standard of care for ordinary negligence, these references were not sufficient to determine whether a violation of them constituted negligence per se. Id. at 416.

Further, as no evidence exists that Six Flags surrendered its premises to Kull or his employer, we cannot accept Six Flags' argument that Kull was solely responsible for determining whether the scoreboard was safe. *Torrington Co. v. Hill*, 219 Ga. App. 453, 455 (1) (465 SE2d 447) (1995). The fact that Kull was an employee of a contractor retained to change the light bulbs on the scoreboard does not eliminate Six Flags' obligations to him as an invitee on its land where the scoreboard was located. See *Barksdale v. Nuwar*, 203 Ga. App. 184, 185 (416 SE2d 546) (1992).

Kull, as a contractor employee, however, was expected "to determine for himself whether his place of employment is safe or unsafe, and ordinarily may not recover against the owner for injuries sustained in the performance of the contract." *Amear v. Hall*, 164 Ga. App. 163, 167 (2) (296 SE2d 611) (1982). He had a greater duty of care to ensure that his method and means of performing his work were safe because he had discretion over how he did the work. *Whirlpool Corp. v. Hurlbut*, 166 Ga. App. 95, 100 (4) (303 SE2d 284) (1983). Nevertheless, given the latent nature of the defect, and the testimony that nothing would indicate to Kull that the box was wired improperly, we find that a question of fact remains on whether Six Flags had a duty to warn Kull because it had superior constructive knowledge of this defect. *West v. Briggs & Stratton Corp.*, 244 Ga. App. 840, 844 (536 SE2d 828) (2000); *Amear*, supra, 164 Ga. App. at 167.

In any event, these arguments disregard our Supreme Court's admonition that the " 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted only when the evidence is plain, palpable, and undisputed." *Robinson v. Kroger Co.*, supra, 268 Ga. at 748 (2) (b). In this case, we cannot agree that the evidence is so clear that the issues should not be submitted to a jury.

4. Kull asserts that the statute of repose, OCGA § 9-3-51 (a),[2] does not apply because the scoreboard was not an improvement to

---

[2] No action for damages for construction of an improvement to real property shall be brought more than eight years after substantial completion of such an improvement.

real property. See *Turner v. Marable-Pirkle, Inc.*, 238 Ga. 517, 518 (233 SE2d 773) (1977) (power pole not improvement to real property); *Atlanta Gas Light Co. v. City of Atlanta*, 160 Ga. App. 396 (287 SE2d 229) (1981) (gas line not improvement to real property).

Six Flags, however, contends that, using a common sense analysis, the scoreboard is obviously an improvement to real property. See *Mullis v. Southern Co. Svcs.*, 250 Ga. 90, 94 (296 SE2d 579) (1982). Questions remain, however, as to whether the improvement was permanent in nature; whether it added to the value of the realty; and whether the parties intended the "improvement" to be an improvement to real property or personalty. Id. Although Six Flags contends that this action is barred by OCGA § 9-3-51 (a) because it was filed more than eight years after the scoreboard was built, we find that the evidence is not so conclusive on whether the scoreboard was an improvement to real property under OCGA § 9-3-51 (a) that the issue can be decided as a matter of law. Therefore, the issue should be submitted to a jury. *Barksdale*, supra, 203 Ga. App. at 185 ("Normally it is for a jury to determine whether an owner has exercised ordinary care in keeping the premises safe for those invited thereon.").

Accordingly, the grant of summary judgment must be reversed and the case remanded to the trial court for further proceedings.

*Judgment reversed. Blackburn, C. J., Pope, P. J., and Mikell, J., concur. Smith, P. J., Miller and Phipps, JJ., dissent.*

SMITH, Presiding Judge, dissenting.

I respectfully dissent. It is certainly regrettable that Kull was injured, but his injury was not attributable to Six Flags. As Kull was changing a light bulb *without turning off the power* and *without using a circuit tester or voltmeter*, he used *a pair of metal pliers* to remove the base of a broken light bulb, inserting the pliers *into an electrical socket* to grasp the base *while standing on a metal ladder*. Kull's actions not only violated Occupational Safety and Health Act regulations and general safety practices for electrical work, they violated basic safety rules that every adult is presumed to know. Kull's conduct was contributorily negligent as a matter of law and amounted to a voluntary assumption of a known risk. Moreover, his knowledge of the hazard was equal or superior to that of Six Flags. Accordingly, the trial court did not err in granting summary judgment.

The contract between the Atlanta Coca-Cola Bottling Company and Kull's employer, Mahalo Advertising, declares that Mahalo is an independent contractor and gives Mahalo sole control over the time, manner, and methods used in maintenance and repair of the scoreboard. As the majority recognizes, under Georgia law "[a]n [independent] contractor is expected to determine for himself

whether his place of employment is safe or unsafe, and ordinarily may not recover against the owner for injuries sustained in the performance of the contract." (Citations and punctuation omitted.) *Torrington Co. v. Hill*, 219 Ga. App. 453, 455 (1) (465 SE2d 447) (1995). And, again as the majority recognizes, Kull had a higher duty of care as an independent contractor to ensure his own safety, since he had discretion as to the method and means of performing the work. *Whirlpool Corp. v. Hurlbut*, 166 Ga. App. 95, 100 (4) (303 SE2d 284) (1983) (full concurrence in Division 4).

Kull's brief characterizes him as "an unskilled maintenance worker" with a tenth grade education, but his resume shows substantial technical experience as well as courses at DeKalb Community College. Kull himself testified that he was an ASE certified automotive master technician, had over 20 years experience in electrical work, and considered himself an expert in automotive electronics, scoreboard electronics, and electrical theory. While he was not a licensed electrician, "[t]o qualify as an expert, generally all that is required is that a person be knowledgeable in a particular matter; his special knowledge may be derived from experience as well as study, and formal education in the subject is not a requisite for expert status." (Citations omitted.) *Vasquez v. State*, 241 Ga. App. 512, 513 (2) (527 SE2d 235) (1999).

Kull had received as part of his training with his employer a complete set of manuals for the scoreboards he was servicing. The manual cautioned him to turn off the power to the scoreboard when replacing lamps, fuses, or modules. A manager and engineer for the scoreboard manufacturer testified that "basic safety procedures" forbid any work on a scoreboard while the power is on and that it would be "extraordinarily foolish" to attempt to remove the base of a broken light bulb without first turning the power off, even if a fuse appeared to be blown. The manager further testified that insulated pliers are inadequate to protect from shock. Kull acknowledged that he did not know the rating of the pliers other than that they were not high voltage rated.

This court has recognized, in a product liability context, "the inherent and obvious danger" of electrical shock with "all electronic appliances." *Moore v. ECI Mgmt.*, 246 Ga. App. 601, 605 (1) (542 SE2d 115) (2000). Most importantly, common sense dictates that a metal object should not be inserted into an electrical socket without a positive indication that the wiring is not energized. By choosing to assume that a fuse had blown, choosing not to turn off the power even after breaking the bulb, choosing not to use a circuit tester or voltmeter, and choosing to insert an inadequately insulated metal tool into an electrical socket, Kull made a series of independent decisions that cumulatively placed him in great danger of electrical

shock, even though other means existed for replacing the bulb without exposing himself to danger. "A person cannot undertake to do what is obviously a dangerous thing and at the same time avoid the responsibility for the self-assumed risk." (Citation and punctuation omitted.) *Brown v. Southern Bell Tel. &c. Co.*, 209 Ga. App. 99, 101 (2) (432 SE2d 675) (1993) (truck driver climbing near electrical wires). Kull "tested a known danger," id., which he could have avoided by switching off the power and using a circuit tester before inserting a metal tool into the socket. As a matter of law, "he could have avoided the consequences to himself of any negligence" on the part of Six Flags. Id. "It is likewise apparent that he was fully aware of the danger involved. He nevertheless proceeded, and was injured. Because he assumed the risk, the trial court properly entered summary judgment for defendants." (Citations omitted.) Id.

Kull's claim also fails because he has not demonstrated superior knowledge of the risk of electrical shock on the part of Six Flags. It is undisputed that Six Flags had no actual knowledge of the miswired transformer box. Kull argues that the existence of the defect from the time of installation, approximately 20 years before, in itself provides constructive notice to the landowner. He cites cases holding that constructive knowledge may arise if a dangerous condition has lasted so long that the landowner should have discovered it. *Armenise v. Adventist Health System/Sunbelt*, 219 Ga. App. 591, 593 (466 SE2d 58) (1995); *Collins v. East R. S., Inc.*, 228 Ga. App. 627 (1) (492 SE2d 351) (1997). But these cases, and others like them, require a second level of analysis: "whether in the exercise of ordinary care the defendants should have discovered the hidden defect." *Armenise*, supra at 593. The landowner need not discover a defect that is concealed and not revealed by the exercise of ordinary care. Id.

Kull, his co-worker, and his expert all agreed that the scoreboard functioned and appeared to be operating properly. Kull's co-worker testified that the only way to discover the miswiring was "to get up with a voltmeter" and test the circuit. And Kull's expert witness acknowledged that a layman would not be able to detect the miswiring. While Kull claims in his brief that rust on the transformer box should have put Six Flags on notice of a defect (although rust on the box has no relation to miswiring), Kull also saw the rusty transformer box and did not believe that it put him on notice of any potential problems. He agreed that he "didn't see anything based on his visual inspection that would cause any concern."

While Kull was not a licensed electrician, the record reflects his extensive experience and training and the fact that he considered himself an expert in electronics in general and scoreboards in particular. Kull has failed to show superior knowledge of the condition of

the scoreboard on the part of Six Flags, particularly in view of his acknowledged expertise and 20 years experience.

For these reasons, I respectfully dissent.

I am authorized to state that Judge Miller and Judge Phipps join in this dissent.

DECIDED MARCH 29, 2002 —
RECONSIDERATION DENIED APRIL 12, 2002 — ▮▮▮▮▮▮

*Northcutt, Edwards, Gordon, Perrotta & Feingold, Joseph D. Perrotta, Louis R. Feingold, Joseph H. King, Jr.*, for appellant.

*Savell & Williams, Robert E. Mulholland, Alston & Bird, Andrew M. Gibson, Heather R. Peoples*, for appellee.