A01A2315. KULL v. SIX FLAGS OVER GEORGIA II, L.P.
(592 SE2d 143)

SMITH, Chief Judge.

This is the second appearance of this case before this court. In *Kull v. Six Flags Over Ga.,* 254 Ga. App. 897 (564 SE2d 747) (2002), this court reversed the grant of summary judgment to Six Flags on Kull's personal injury claim. The Supreme Court of Georgia reversed in *Six Flags Over Ga. v. Kull,* 276 Ga. 210 (576 SE2d 880) (2003), and remanded for us to address "the question of whether OSHA regulations apply to this litigation, and if so whether the evidence compels a finding that Kull was contributorily negligent per se. This issue must be decided in order to determine whether the grant of summary judgment was appropriate." Id. at 212. After a review of the record, we conclude that OSHA regulations do apply here and that the evidence indeed compels a finding of per se contributory negligence on the part of Kull. We therefore affirm the judgment of the trial court.

A detailed account of the relevant facts may be found in the ear-

---

[9] *King v. Turner,* 255 Ga. App. 56, 57 (564 SE2d 463) (2002).

lier appearance of this case. *Kull*, supra, 254 Ga. App. 897. In brief, Kull's employer, Mahalo Advertising, was under contract to maintain an electronic scoreboard on the Six Flags property. In the course of maintaining this scoreboard, Kull did not turn off the power to the board and did not check the circuit because he believed that a fuse had blown. But, due to a wiring defect in the nearby transformer box, the circuit remained energized. Kull was in the process of replacing a light bulb when he broke the glass globe and used a pair of metal pliers in an attempt to grasp the metal base of the bulb and remove it. The still-energized circuit shocked Kull and threw him from the ladder, causing his injuries. Id. at 899.

"As the trial court recognized, generally, negligence per se arises when a statute or ordinance is violated. The violation of certain mandatory regulations may also amount to negligence per se if the regulations impose a legal duty." (Citations omitted.) *Hubbard v. Dept. of Transp.*, 256 Ga. App. 342, 349-350 (3) (568 SE2d 559) (2002).

> [B]efore negligence per se can be determined, a trial court must consider (1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm the statute was intended to guard against. Finally, if the court finds negligence per se, the plaintiffs must then demonstrate a causal connection between the negligence per se and the injury. And it is generally a jury question as to whether or not such negligence proximately caused the injury.

(Citations and punctuation omitted.) *Hubbard*, supra at 350. Here, Kull was required by 29 USC § 654 (b) to "comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this Act which are applicable to his own actions and conduct."

OSHA regulations governing electrical safety-related work practices apply both to qualified and unqualified persons "working on, near, or with" premises wiring in or on buildings "and on other premises such as yards, carnival, parking, and other lots." 29 CFR § 1910.331 (a), (a) (1). In addition, the Standard for Electrical Safety Requirements for Employee Workplaces promulgated by the National Fire Protection Association (NFPA 70E) has been incorporated by reference into the OSHA standards. 29 CFR § 1910.6 (q) (16). The Introduction to NFPA 70E, § I-2.1 provides definitions that "apply wherever the terms are used throughout this standard." This section contains the following definition: "Exposed. (As applied to live parts.) Capable of being inadvertently touched or approached nearer

than a safe distance by a person. It is applied to parts not suitably guarded, isolated, or insulated." Part II, NFPA 70E, Chapter 1, § 1-5 defines "[e]nergized" as "[e]lectrically connected to a source of potential difference, or electrically charged to have a potential significantly different from that of earth in the vicinity." The socket containing the remains of the broken bulb was both energized and exposed within the meaning of these definitions. OSHA regulations, including the NFPA standards, therefore apply to Kull's unsuccessful attempt to remove the broken bulb from the socket.

Kull violated OSHA regulations and NFPA standards governing electrical safety in numerous respects. Most importantly, he failed to "deenergize" (shut off power to) the scoreboard, in violation of 29 CFR § 1910.333 (a) (1). In connection with this failure, he also failed to lock out or tag the circuit energizing the part as required by 29 CFR § 1910.333 (b) (2) or to confirm that the circuit was deenergized as required by 29 CFR § 1910.333 (b) (2) (iv). Part II, NFPA 70E, Chapter 2, § 2-3.1.3 likewise requires deenergizing circuits, lockout or tagout, and the use of an adequately rated voltage detector to verify that each circuit part is deenergized.

Kull also failed to use a ladder with *nonconductive siderails*[1] as required by 29 CFR § 1910.333 (c) (7) and Part II, NFPA 70E, Chapter 2, § 3-4.3.1. In addition, Kull, while working on an energized circuit or a circuit that he did not know to be deenergized, 29 CFR § 1910.333 (b) (1), failed to use insulated tools, 29 CFR § 1910.335 (a) (2) (i), or personal protective equipment properly rated for the voltage, 29 CFR § 1910.335 (a) (1) (i); 29 CFR § 1910.137. Kull acknowledged that he did not know the rating of his pliers other than that they were *not* high voltage rated.

Kull's injury was caused directly by his insertion of a metal tool of unknown insulating capacity into an energized and exposed electrical component while standing on a conductive ladder, without shutting off the power or employing a circuit tester or voltmeter to verify that the circuit was not energized. The concurrence of all these violations of OSHA regulations and NFPA standards created a path to ground for the electrical current through Kull's body, shocking him and causing him to fall from the ladder.

"A plaintiff's contributory negligence bars any recovery whatsoever if his failure to use ordinary care for his own safety is the sole proximate cause of his injuries, even though such negligence concurs with the negligence of the defendant." (Citation and footnote omitted.) *North Ga. Elec. Membership Corp. v. Webb*, 246 Ga. App. 316,

---

[1] A metal ladder obviously does not meet this nonconductive standard. The thin layer of rubber affixed to the metal feet of a metal ladder is for the purpose of preventing slips, not electrical shock.

319 (2) (540 SE2d 271) (2000). The facts of this case are strikingly similar to those in *Beamon v. Ga. Power Co.*, 199 Ga. App. 309 (404 SE2d 463) (1991). Beamon received an electric shock while working on a Georgia Power transformer. He alleged that Georgia Power had negligently installed the transformer in contact with a ground wire, contributing to his injury. We held that the defective installation

> could have done nothing more than give rise to the occasion which made appellant's injuries possible. Other circumstances preponderated in causing appellant's injuries. Specifically, the evidence was undisputed that had appellant been wearing insulated gloves or had the wires been properly covered, his injury would not have occurred. This court has adhered to the rule that only where the evidence is plain and palpable will negligence, contributory negligence or the exercise of ordinary care for one's own safety be decided by the court as a matter of law, and such is the legal situation in this case. Accordingly, the trial court did not err in granting summary judgment to Georgia Power.

(Citations and punctuation omitted.) Id. at 312. Here, as in *Beamon*, the defective wiring in the transformer box merely "[gave] rise to the occasion which made appellant's injuries possible." Id. Had Kull not violated the OSHA and NFPA requirements that he turn off the power, tag out the circuit, check to verify that the circuit was de-energized, and use appropriately insulated tools and equipment near a circuit he did not know to be deenergized, his injury would not have occurred.

Kull's conduct fulfills all the requirements of negligence per se. The OSHA regulations and NFPA standards as adopted by OSHA are mandatory and have the force of law, Kull was in the protected class, the harm he suffered was the type of harm the NFPA regulations were intended to guard against, and his negligence per se proximately caused his injuries. *Hubbard*, supra at 350. His actions constituted contributory negligence as a matter of law. The trial court therefore did not err in granting summary judgment.

*Judgment affirmed. Blackburn, P. J., Miller, Phipps and Mikell, JJ., concur. Barnes and Adams, JJ., dissent.*

BARNES, Judge, dissenting.

As I cannot concur with affirming the grant of summary judgment to Six Flags in this case, I must respectfully dissent. I cannot agree with the majority's conclusions that Six Flags established that Kull's actions caused his injuries or that OSHA and National Fire Protection Association (NFPA) 70E, the Standard for Electrical

Safety Requirements for Employee Workplaces, apply to Kull's activities.

1. Giving Kull the benefits of the presumptions, inferences, and construction of the evidence that our summary judgment law requires, *Kull v. Six Flags Over Ga.*, 254 Ga. App. 897, 898 (1) (564 SE2d 747) (2002), the evidence shows that

> Kull was escorted to the sign by a Six Flags employee who turned the power on and told Kull that a lot of bulbs were out. Kull checked the scoreboard visually for obvious dangers and made sure everything functioned properly. He saw no obvious problems, and things appeared to be functioning properly. His expert testified that nothing would indicate to Kull that the scoreboard was not wired properly. Kull saw that a lot of the lights were out. To change the light bulbs, Kull climbed an aluminum ladder with rubber feet and, without turning off the electricity to the scoreboard, began changing the burned-out bulbs. After Kull changed a few bulbs, one glass bulb broke from its metal base, which apparently caused a fuse to blow. *Because a fuse blowing should interrupt the flow of electricity*, Kull assumed the power was off and that he could remove the broken bulb by inserting his metal pliers, with insulated handles, into the metal bulb base and unscrewing the bulb. Unfortunately, however, in this case electricity still flowed to the bulb, and Kull was thrown backward off the ladder. As a result, the fall cracked several vertebrae in his back and one vertebra was partially crushed. Investigation later revealed that the electric control box to the scoreboard was wired improperly when it was installed years earlier. Thus, a ground lead had 330 volts flowing through it, when it should not have carried any electricity at all.

(Emphasis supplied.) Id. at 898-899.

This record does not support the majority's decision that the evidence demands the conclusion that Kull's actions caused his own injuries. Under our law, Six Flags, as a defendant moving for summary judgment, cannot rely upon an absence of evidence in the record disproving the affirmative defense of contributory negligence per se, but instead had the burden of proving all the elements of this defense. *Hess v. Textron Automotive Exteriors*, 245 Ga. App. 264, 266 (2) (536 SE2d 291) (2000); *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 691 (2) (458 SE2d 876) (1995). I cannot agree that Six Flags has done so.

Summary judgment based on a defense of contributory negli-

gence per se is not authorized if genuine issues of material fact exist on whether the alleged contributory negligence per se was the proximate cause of the plaintiff's injury. *Hubbard v. Dept. of Transp.*, 256 Ga. App. 342, 352-353 (3) (568 SE2d 559) (2002). Therefore, Six Flags was not entitled to summary judgment on this ground, as a matter of law.

"Negligence per se is not liability per se." *Parks-Nietzold v. J. C. Penney, Inc.*, 227 Ga. App. 724, 726 (2) (490 SE2d 133) (1997). "Negligence per se is actionable negligence only where it is the proximate cause of the plaintiff's injuries. [Cit.] Proximate cause is for the jury to decide. [Cit.]" *Humphreys v. Kipfmiller*, 237 Ga. App. 572, 575 (515 SE2d 878) (1999). Similarly, Kull's negligence per se would only be a defense to this action if it were the proximate cause of his injuries.

Here, the evidence shows that Kull used insulated pliers and used a ladder with rubber feet while replacing the bulb, *Kull v. Six Flags,* supra, 254 Ga. App. at 898 (2), and, more importantly, that even turning "off the power to the board would not have necessarily prevented this incident." Id. at 901. Further, but for Six Flags's negligence in maintaining an improperly wired scoreboard, no power should have been flowing to the scoreboard because the fuse had blown and that should have turned off the power to the circuit Kull was working on.

What the majority refuses to appreciate is that the fuse blowing deenergized the circuit just as if Kull had turned off the switch on the scoreboard. This fact, coupled with the evidence that even turning off the switch would not necessarily have prevented Kull's injuries, demands that a jury decide whether Kull's actions, Six Flags's negligence, or a combination of both, caused his injuries.

Under the majority's theory, anyone working on an electrical circuit in a home must turn off the power to the entire home, and not just trip the circuit breaker to the circuit where the work is being done. The evidence shows that this is not done in normal industry practice.[2]

Under this evidence I cannot say as a matter of law that the failure to comply with the OSHA standards was the proximate cause of

---

[2] Kull's expert . . . testified that it was reasonable to assume that once the lights on the scoreboard went out, the power was off and that it was "prudent" for Kull to attempt to remove the bulb with the insulated pliers because "he had turned off the power by blowing the fuse in a manner in which I described before where electricians sometimes short things out intentionally to trip the breaker. In this case, the fuse is analogous to the breaker." Also, Mr. Johnson, Kull's co-worker, testified that he would have done the same thing if the fuse had blown while he was changing light bulbs. According to Kull's expert, it is not unusual for experienced electricians to intentionally short out a circuit so that they can work on it. *Kull,* supra, 254 Ga. App. at 900 (2).

Kull's injuries. As our Supreme Court has emphasized, trial courts "can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only where the evidence is plain, palpable and undisputable. *Robinson v. Kroger Co.*, 268 Ga. 735, 739 (1) (493 SE2d 403) (1997)." (Citations and punctuation omitted.) *Ogletree v. Navistar Intl. Transp. Corp.*, 271 Ga. 644, 646 (522 SE2d 467) (1999). This is not such a case, and the jury should decide these issues, even if, as the majority has concluded, the OSHA regulations apply.

2. Nevertheless, I also cannot concur with the majority that the standards in Part II of NFPA 70E, on which the majority and Six Flags rely, apply to the work Kull was doing. By its terms Part II covers only "electrical safety-related work practices and procedures for employees who work on or near exposed energized electrical conductors or circuit parts in workplaces that are included in the scope of this standard." Part II, NFPA 70E, Chapter 1, § 1-1. Kull was not working on exposed[3] energized electrical conductors or circuits; he was changing burned-out light bulbs. Thus, he had no need to come into contact with exposed energized electric conductors or circuit parts to do his work. He was shocked only because of the latent defect in the scoreboard switch.

Consequently, the arguments based on Part II are unpersuasive. Instead, because changing light bulbs involves mere maintenance of the scoreboard, I find that Kull's actions are governed by Part III of NFPA 70E, Safety-Related Maintenance Requirements.

> Part III shall cover practical safety-related maintenance requirements for electrical equipment and installations in workplaces as included in the scope of NFPA 70E. These requirements shall identify only that maintenance directly associated with employee safety.
>
> Part III does not prescribe specific maintenance methods or testing procedures. It is left to the employer to choose from the various maintenance methods available to satisfy the requirements of Part III.
>
> For the purpose of Part III, maintenance shall be defined as preserving or restoring the condition of electrical equipment or installations, or parts of either, for the safety

---

[3] NFPA 70E defines exposed, as applied to live parts, as "[c]apable of being inadvertently touched or approached nearer than a safe distance by a person. It is applied to parts not suitably guarded, isolated, or insulated," and, as applied to wiring methods, as "[o]n or attached to the surface or behind panels designed to allow access." Also, "[f]or the purposes of Chapter 6, [Special Systems,] the word 'exposed' means that the circuit is in such a position that, in case of failure of supports or insulation, contact with another circuit may result."

of employees who work on, near, or with such equipment. Repair or replacement of individual portions or parts of equipment shall be permitted without requiring modification or replacement of other portions or parts that are in safe condition.

Part III, NFPA 70E, Chapter 1, Introduction.[4] Chapter 11 of Part III governs personal safety and protective equipment, but the chapter merely provides that "[p]ersonal safety and protective equipment such as the following shall be maintained in a safe working condition." Part III, NFPA 70E, § 11-1.

I also do not find that the OSHA regulations apply to changing light bulbs. Even though OSHA applies generally to employees, 29 USC § 654 (b), these regulations specifically cover electrical safety work practices for a list of designated electrical work, such as *installation*[5] *of* premises wiring, wiring for connection to supply, installation of other outside conductors, and optical fiber cable. 29 CFR § 1910.331 (a) (1)-(4). Changing light bulbs is neither listed nor included within the listed installations by implication. Therefore, contrary to the majority's assertion, these OSHA standards impose no duty upon Kull, and, thus, are not a basis for applying the doctrine of contributory negligence per se.

Therefore, I must respectfully dissent because I would reverse the judgment of the trial court and remand the case to the trial court for further proceedings.

I am authorized to state that Judge Adams joins in this dissent.

DECIDED NOVEMBER 26, 2003 —
RECONSIDERATION DENIED DECEMBER 16, 2003 — 

*Shivers & Associates, Joseph D. Perrotta, Northcutt, Edwards & Feingold, Louis R. Feingold, King & Hobbs, Joseph H. King, Jr.,* for appellant.

*Savell & Williams, Robert E. Mulholland, Alston & Bird, Andrew M. Gibson, Heather R. Peoples,* for appellee.

---

[4] In my opinion NFPA 70B, Recommended Practice for Electrical Equipment Maintenance, is not applicable, because those practices are only recommended and not mandatory.

[5] Covered work by both qualified and unqualified persons. The provisions of §§ 1910.331 through 1910.335 cover electrical safety-related work practices for both qualified persons (those who have training in avoiding the electrical hazards of working on or near exposed energized parts) and unqualified persons (those with little or no such training) working on, near, or with the following *installations.* (Emphasis supplied.) 29 CFR § 1910.331 (a).