## A96A0912. HOUSING AUTHORITY OF THE CITY OF ATLANTA v. JEFFERSON.
### (476 SE2d 831)

BLACKBURN, Judge.

Housing Authority of the City of Atlanta (AHA) appeals the trial court's denial of summary judgment on the issue of whether it had the duty to inspect for the presence of a smoke detector when qualifying a house for use under federal Section 8 Housing Assistance Payments Program for Existing Housing (Section 8).

Three-year-old Calvin Jefferson, Jr. was severely injured when his family's home caught fire on January 3, 1990. The aunt who was babysitting Jefferson was able to escape the burning house, but Jefferson remained inside. He was later rescued by emergency personnel. Jefferson's mother had leased the house approximately six months earlier. Prior to the rental, the house was inspected by AHA, acting in its capacity as the area Section 8 administrator. AHA found the house was suitable for participation in the program, and Jefferson's family received Section 8 assistance to rent the dwelling.

Jefferson, acting through his guardian ad litem, filed the underlying action against AHA for approving the dwelling for Section 8 use even though it lacked a smoke detector. AHA filed a motion for summary judgment asserting it had no duty to ensure that the dwelling contained a smoke detector and, alternatively, that the failure to comply with such duty was not the proximate cause of Jefferson's injuries. The trial court denied AHA's motion, and we granted AHA's application for interlocutory appeal.

1. In its first two enumerations of error, AHA contends that it had no duty to inspect the dwelling for the presence of a smoke detector. While at the time of this incident, federal regulations did not directly impose a duty upon AHA to ensure the presence of a smoke detector in Jefferson's dwelling, they did require compliance with state and local regulations which *did* impose such a duty.[1] OCGA

---

[1] At the time the house was inspected, HUD standards expressly required a smoke

§ 8-3-1 et seq. is the legislation under which local housing authorities such as AHA are created and governed. OCGA § 8-3-7 provides: "All *housing projects* of an authority shall be subject to the planning, zoning, sanitary, and building laws, *ordinances*, and regulations applicable to the *locality in which the housing project is situated.*" (Emphasis supplied.) Under OCGA § 8-3-3 (10) a "housing project" is broadly defined as "[a]ny work or undertaking . . . [t]o provide decent, safe, and sanitary urban or rural dwellings, apartments, or other living accommodations for persons of low income." AHA's role in administrating the Section 8 program fits within this broad definis of a housing project, and consequently, AHA was obligated to ensure that all dwellings approved by AHA for Section 8 participation complied with local Atlanta ordinances.

One such ordinance, adopted in 1984, requires owners to provide a working smoke detector in all residential dwellings prior to their sale or lease. See Atlanta Ordinance § 11-3032.1 (b). Moreover, the ordinance defines an owner as: "Any person, corporation or other legal entity who has legal title or *control*, in whole or *in part*, of any real property" (emphasis supplied) within the city. Atlanta Ordinance § 11-3032.1 (a) (2). Clearly, in its capacity as the area administrator, AHA exercised significant control over the Jeffersons' dwelling. It even had the power to review and approve the landlord's proposed lease prior to its execution. 24 CFR § 882.209 (k). Consequently, for purposes of this ordinance, AHA would be considered an "owner" of the property, and thus it not only had the duty to inspect the dwelling for the presence of a smoke detector, it also had a duty, if necessary, to provide the dwelling with a smoke detector. Consequently, AHA breached its statutory duty by failing to ensure the presence of an operable smoke detector before allowing the house to participate in the Section 8 program. Therefore, the trial court did not err in finding that AHA owed such a duty to Jefferson.[2]

---

detector to be present in only one type of dwelling — a mobile home. 24 CFR § 882.109 (o) (1) (b). The requirement for a smoke detector did not extend to other types of dwellings participating in the Section 8 program. In fact, the pre-printed inspection form prepared by the federal authorities and used by AHA in this particular inspection makes note of whether a unit contains a smoke detector. It reads: "If unit is a mobile home, does it have at least one smoke detector in working condition? *If not a mobile home, check 'Not Applicable.'*" (Emphasis supplied.)

Moreover, subsequent to the fire in this case, HUD amended its regulations to include a completely new section requiring smoke detectors to be present in *all* Section 8 housing beginning in October 1992. 24 CFR § 882.109 (r).

[2] AHA argues that even if a duty was required to inspect for smoke detectors before approving the dwelling, "[it] was under no obligation to ensure that there was a functioning smoke detector in [their] house *on the day of the fire.*" See *Gilley v. Barnett*, 624 S2d 572 (Ala. 1993) (working smoke detector was present in apartment when Section 8 assistance was approved and the approving agency had no ongoing duty to ensure that it remained operable). AHA's argument that it has no ongoing duty to maintain a smoke detector on the

2. In its third enumeration, AHA contends that even if it had the duty to ensure the presence of a smoke detector, the breach of that duty was not the proximate cause of Jefferson's injuries based upon our decision in *Wilkerson v. Alexander*, 208 Ga. App. 83, 85 (429 SE2d 685) (1993).

In *Wilkerson*, a six-year-old girl was killed in a fire while sleeping at a neighbor's house. She had been sleeping on a couch in the den at the time the fire started, but her body was discovered behind the bathroom door. Several other children who had been in the house at the time of the fire were able to escape unharmed. In determining that the dead child's survivors had no cause of action against the owners of the home where the fire occurred, this Court first determined that, unlike the instant case, the owners had no duty to provide a functional smoke detector for the benefit of the fire victim. Id. at 86. In dicta, the Court further noted that the plaintiffs had also failed to establish that the lack of a smoke detector was the proximate cause of the victim's death.

*Wilkerson* is inapposite. In the subject case, a police officer who initially arrived on the scene after receiving an emergency call averred that she could not reach Jefferson due to the fire's intense heat. Jefferson was not rescued until later when the fire department arrived and a fireman went into the burning house with the aid of special equipment including "a breathing apparatus and full protective turnout gear."

The purpose of a smoke detector is to provide an early warning of fire and to reduce the damages and injury resulting therefrom. Whether or not the lack of a smoke detector delayed Jefferson's rescue and contributed to his injuries is a jury question. Had a smoke detector been present to provide an early alarm, it is possible that Jefferson would have been rescued sooner, thereby avoiding or lessening the extent of his injuries. See *Seibers v. Dixie Speedway*, 220 Ga. App. 811 (470 SE2d 452) (1996) (summary judgment denied based on possibility that defendant's actions or omissions worsened injury).

Because questions of fact exist as to whether the presence of a smoke detector may have prevented or lessened Jefferson's injuries, the trial court correctly denied summary judgment on the issue of proximate cause.

3. In its final enumeration of error, AHA asserts that the trial court erred in denying AHA's motion for summary judgment because Jefferson's mother had equal or superior knowledge that the resi-

---

premises is without merit where it never ensured its presence initially and the subject fire occurred within six months of occupancy. The fault herein involved is the failure to ensure the existence of a smoke detector, not its maintenance.

dence lacked a smoke detector when she rented the house. This argument is without merit.

AHA relies on the general law that the owner or occupier of land has no duty to warn against obvious or patent dangers which may be readily observed. See *Commerce Properties v. Linthicum,* 209 Ga. App. 853, 854 (434 SE2d 769) (1993). Similarly, AHA also contends that a landlord is not liable for injuries to his tenant resulting from a patent defect existing at the time of the rental agreement as to which both the landlord and tenant had equal knowledge. See *Hyde v. Bryant,* 114 Ga. App. 535, 536 (151 SE2d 925) (1966). These general rules have no application in the face of a specific duty imposed on AHA by statute. "[L]andlords may not hide behind this general principle to avoid duties mandated by statutes or housing codes." *Roth v. Wu,* 199 Ga. App. 665, 666 (405 SE2d 741) (1991); see also *Bastien v. Metro. Park Lake Assoc., L.P.,* 209 Ga. App. 881 (434 SE2d 736) (1993). Furthermore, pursuant to OCGA § 51-2-1 (b), the alleged negligence of Jefferson's mother cannot be imputed to Jefferson, her minor child, and would not bar his recovery in any event.

In light of the above, the trial court did not err in denying AHA's motion for summary judgment.

*Judgment affirmed. Senior Appellate Judge Harold R. Banke concurs. Beasley, C. J., concurs specially.*

BEASLEY, Chief Judge, concurring specially.

1. I concur in the judgment but not in the designation of the Atlanta Housing Authority as an "owner" of the residence which it approved for rental by a private owner to Jefferson's mother, as that term is used in Atlanta Ordinance § 11-3032.1. Nor is it necessary as a matter of statutory construction principles to construe the term so broadly. Doing so would mean that AHA was obligated to "provide a smoke detector to be placed in accordance with the manufacturer's instructions for each dwelling unit prior to any sale, lease or rental of such unit." Ordinance § 11-3032.1 (b).

As the majority states, the ordinance defines "owner" for the purposes of the section on smoke detectors as: "Any person, corporation or other legal entity who has legal title or control, in whole or in part, of any real property in the City of Atlanta." Ordinance § 11-3032.1 (a) (2). In acting as the approving agency for the federal Section 8 program, AHA does not have control of the third party's rental property. All it can do is withhold approval of it and thereby preclude Section 8 funding, until the party with control brings it up to Code, i.e., provides a smoke detector.

Plaintiff does not contend that AHA was required to *provide* a detector. In fact, he makes that clear in his appellate brief: "Plaintiff is not claiming that AHA had a duty to 'provide' (and therefore

purchase and/or install) the smoke detector for the subject house. Appellee claims that because a smoke detector was required by this law to be in every house, AHA with this knowledge had a duty to require the landlord to install a functioning smoke detector before approving the Jeffersons' move into the home under Section 8." (Emphasis omitted.)

The alleged breach of statutory duty was in approving the home for rental under a federal program which provided the rent when the home did not comply with the law. The whole purpose of the minimum quality standards requirement before federal funds are available is to assure that housing for poor people is "decent, safe and sanitary." 42 USC § 1437; 42 USC § 1437 f (a); 24 CFR § 882.102. Landlords who wish to take advantage of the secure and market-based Section 8 source of rent income must meet the standards imposed by law, in this case the city ordinance, and it is the duty of the AHA pursuant to its agreement with the United States Department of Housing and Urban Development and OCGA § 8-3-7 to assure compliance before federal funds are available. AHA has the authority to hold out the carrot, but it may not give the carrot before fulfilling its own responsibility pursuant to federal law to assure that the premises owner to whom the rent will be paid has furnished a decent, safe and sanitary dwelling. In this instance, the AHA has not shown that it approved a house that met a local ordinance requirement for a smoke detector, which is a safety device; yet it authorized the payment of Section 8 funds.

2. As to proximate cause and AHA's claim of remoteness as a matter of law in this summary judgment posture of the case, " '(t)he inquiry is not whether the defendant's conduct constituted a cause in fact of the injury, but rather whether the causal connection between that conduct and the injury is too remote for the law to countenance a recovery.' " *Collie v. Hutson*, 175 Ga. App. 672, 673 (334 SE2d 13) (1985), quoting *Hercules, Inc. v. Lewis*, 168 Ga. App. 688, 689 (309 SE2d 865) (1983).

The governing statute is OCGA § 51-12-9: "Damages which are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered. However, damages traceable to the act, but which are not its legal and natural consequence, are too remote and contingent to be recovered." Negligence is predicated on what should have been anticipated; a tortfeasor is responsible for a consequence which is "probable, according to ordinary and usual experience . . . which human foresight can foresee." *Jacobs v. Taylor*, 190 Ga. App. 520, 526 (379 SE2d 563) (1989); *Bradley Center v. Wessner*, 250 Ga. 199 (296 SE2d 693) (1982); *Moses v. Chapman*, 113 Ga. App. 845 (1) (149 SE2d 850) (1966). I agree that in this case the element of proximate cause is a jury question.

Decided October 3, 1996.

Thomas, Kennedy, Sampson & Patterson, Thomas G. Sampson, Jeffrey E. Tompkins, Melynee C. Leftridge, Myra H. Dixon, for appellant.

Clifford J. Steele, Anthony A. D'Aurio, for appellee.