**FIRST DIVISION**
**RICKMAN, C. J.,**
**BARNES, P. J., and LAND, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 30, 2023**

# In the Court of Appeals of Georgia

A23A0462. MERCY HOUSING GEORGIA III, L.P. d/b/a THE ROSE OF SHARON APARTMENTS et al. v. KAAPA.

LAND, Judge.

This appeal is taken from the grant of partial summary judgment to plaintiff Michael Kaapa, whose father ("Mr. Kaapa") died shortly after suffering a stroke in an apartment complex owned and managed by defendants Mercy Housing Georgia III, LP d/b/a The Rose of Sharon Apartments, Mercy Housing Management Group, Inc., and Mercy Housing, Inc. On appeal, defendants argue that the trial court erred in granting plaintiff summary judgment on the issue of their negligence per se in failing to provide the emergency call device mandated by applicable federal regulations. Defendants also assert that the trial court erred when it authorized plaintiff's expert to testify, when it denied them summary judgment on the issues of

causation and punitive damages, and when it denied Mercy Housing, Inc.'s motion for summary judgment since it is allegedly an improper party. We find no error and affirm.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Lau's Corp. v. Haskins*, 261 Ga. 491, 491 (405 SE2d 474) (1991). We therefore construe the record in favor of defendants as the non-movants on the issue of their negligence per se and in favor of plaintiffs as the non-movants concerning the remaining issues on appeal.

Thus viewed, the record shows that at the time Mr. Kaapa moved into the apartment complex operated by the defendants and doing business as the Rose of Sharon, all residents were required to be furnished with a personal emergency response device, such as a wearable emergency pendant system ("EPS"), to be used in case of a medical emergency. As a Section 8 elderly housing facility,[1] the complex is entitled to receive subsidies from the U. S. Department of Housing and Urban

---

[1] See the federal Housing Act of 1937, 42 U.S.C. § 1437; *Housing Auth. of City of Augusta v. Gould*, 305 Ga. 545, 545 (1) (826 SE2d 107) (2019).

Development (HUD), as long as it complies with HUD regulations. See *Gould*, 305 Ga. at 545-546 (1).

The regulation at issue here is HUD Handbook 4910.1, Section 100-2.20, which sets out "minimum property standards" including the following:

> In projects containing 20 or more living units, each bathroom and one bed location in each living unit *shall be furnished with one of the following emergency call systems*: an emergency call system which registers a call (annunciator and alarm) at one or more supervised locations, an intercommunicating telephone system which is monitored 24 hrs a day, or an emergency call system which sounds an alarm (not the fire alarm) in the immediate corridor and automatically actuates a visual signal in the corridor at the living unit entrance.

(Emphasis supplied.) In 2014, HUD issued a memorandum adding "mobile personal emergency response devices that are worn on a tenant's person" to the list of "acceptable" devices for purposes of Section 100-2.20, "so long as *the owner* is able to provide ongoing assurance that the devices are *operational and available for use by tenants* and other household members." (Emphasis supplied.) No change was made to the requirement that one such approved system or device be in place at the subject properties, and the memorandum specified that the system or device must be made

3

"*available* in each bathroom and one bed location *in each living unit*." (Emphasis supplied.)

Mercy originally complied with this regulation by installing pullcord systems in each unit, but it disconnected these in 2014 in favor of issued EPSs. On taking up residency, tenants were presented with a form that either accepted or rejected an EPS; Mr. Kaapa did not complete this form. The property manager, Karen Anderson, testified that Mercy did not have the option of not abiding by the regulations implemented in Section 100-2.20 and that no emergency notification system, including an EPS, had been made available to Mr. Kaapa in his apartment. Mercy later stipulated that there had been no emergency device of any kind in his apartment.

On or around February 17, 2016, plaintiff became concerned when he could not contact his father and went to check on him. The staff denied plaintiff access but went to the unit themselves and found Mr. Kaapa lying face down on the floor covered in urine and feces. Mercy's assistant property manager testified that Mr. Kaapa was able to "grunt" in response to her questions and could move his left leg. By the time Mr. Kaapa arrived at the hospital in an ambulance, he was agitated and was attempting to pull IVs from his arm with his left hand. When plaintiff asked his father to calm down and listen to the doctors' questions, Mr. Kaapa shook his head and began to cry. He

4

died two days later, having previously suffered a massive left hemispheric stroke which had paralyzed his right side. Three neurologists, including Mr. Kaapa's treating neurologist, testified that even after suffering the stroke, he had retained the ability to use his left hand, meaning that he could have been alert enough to activate an emergency device immediately after the stroke. Medical testimony also showed that the prompt treatment of stroke patients – that is, within 4 ½ hours of onset – makes it probable that the patient will recover the ability to walk, whereas a three- or four-day lapse, as here, will result in a two- to threefold increase in mortality.

After his father's death, plaintiff rejected Mercy's request that he return his EPS on the ground that his father had never been issued such a device; an administrator agreed when she discovered the unit's EPS in a box behind the front desk of his residential hallway. According to plaintiff's expert Allan Snyder, who had substantial experience in property management, including senior housing, Mercy's failure to provide any emergency device, as well as its presentation of an apparent opt-out form, was a breach of its mandatory legal duty to supply an emergency notification system to its tenants.

In July 2018, plaintiff filed this wrongful death action alleging negligence and negligence per se for failing to issue an emergency call device to Mr. Kaapa, and

seeking both compensatory and punitive damages.[2] Plaintiff moved for partial summary judgment on the issue of defendants' negligence per se. Defendants moved for summary judgment on the issues of causation, punitive damages, and Mercy Housing, Inc.'s status as a defendant, and also moved to exclude plaintiff's expert Snyder from testifying. After argument, the trial court granted plaintiff's motion and denied defendants' motions. This appeal followed.[3]

1. Defendants first argue that the trial court erred when it granted plaintiff partial summary judgment on the issue of defendants' negligence per se because (a) expert Snyder's opinion testimony could not provide a basis for the grant and (b) questions of material fact remained as to whether an EPS was made "available" to Mr. Kaapa. We disagree.

---

[2] An amended complaint added a claim seeking expenses of litigation under OCGA § 13-6-11.

[3] The trial court's grant of partial summary judgment on the issue of negligence per se authorized this direct appeal as well as the consideration of all other orders entered in the case. OCGA §§ 9-11-56 (h) (authorizing a direct appeal from an order granting partial summary judgment), 5-6-34 (d) (when a direct appeal is authorized, "all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court"); *Southeast Ceramics, Inc. v. Klem*, 246 Ga. 294, 295 (1) (271 SE2d 199) (1980) (authorizing review of the denial of summary judgment "when it is tied to the appeal of an appealable order or judgment").

6

(a) Without specific citation to the record, defendants assert that the trial court abused its discretion when it authorized Snyder to testify. See OCGA § 24-7-702 (b) (authorizing expert testimony when "based on sufficient facts and data" and "the product of reliable principles and methods," applied "reliably to the facts of the case which have been or will be admitted into evidence").

The record shows that Snyder had decades of experience in property management, including senior residential housing as regulated by HUD and other agencies; that he testified on the basis of this experience as to the responsibilities owed by owners to residents of senior housing; and that after reviewing the HUD regulations at issue, he testified as to his opinion of defendants' performance in this respect, including their failure to ensure that residents were provided with EPSs. "Expert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves[.]" (Citation, punctuation and emphasis omitted.) *Ga. Dept. of Transp. v. Baldwin*, 292 Ga. App. 816, 819 (665 SE2d 816) (2008). On this record, there was no abuse of discretion in admitting Snyder's testimony. See *Ga. Dept. of Transp. v. Owens*, 330 Ga. App. 123, 130 (1) (766 SE2d

7

569) (2014) (no abuse of discretion in admitting the opinion of an accident reconstruction expert concerning conditions under which an accident occurred).

(b) "[G]enerally, negligence per se arises when a statute or ordinance is violated. The violation of certain mandatory regulations may also amount to negligence per se if the regulations impose a legal duty." (Citation and punctuation omitted.) *Kull v. Six Flags Over Georgia II, LP*, 264 Ga. App. 715, 716 (592 SE2d 143) (2003). "Before negligence per se can be determined, a trial court must consider (1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm the statute was intended to guard against." (Citation omitted.) Id. Even "[i]f the court finds negligence per se," however, a plaintiff "must then demonstrate a causal connection between the negligence per se and the injury. And it is generally a jury question as to whether or not such negligence proximately caused the injury." Id.

Here, there is no dispute that as a resident of Section 8 housing, Mr. Kaapa was a member of the class of persons the HUD regulations were intended to protect. See *Forsh v. Williams*, 321 Ga. App. 556, 560 (1) (740 SE2d 297) (2013) (plaintiff's allegations stated a claim against landlord for failing to make repairs, in violation of HUD regulations); *Rockefeller v. Kaiser Foundation Health Plan of Ga.*, 251 Ga.

8

App. 699, 702-704 (1) (554 SE2d 623) (2001) (a hospital's failure to provide a supervisory physician violated statutes and was negligence per se against a patient). Likewise, there was undisputed testimony that early treatment of stroke dramatically improves outcomes, and the HUD regulation was reasonably calculated to reduce the risk posed by untreated stroke to elderly residents. The property manager admitted that the complex had not provided Mr. Kaapa with a pendant, and Mercy later stipulated that they had failed to provide Mr. Kaapa with any emergency call system or device.

As Judge Beasley noted in another Section 8 case, "[l]andlords who wish to take advantage of the secure and market-based Section 8 source of rent income must meet the standards imposed by law, in this case [a federal regulation], and it is the duty of the [landlord] pursuant to its agreement with [HUD] . . . to assure compliance before federal funds are available." *Housing Auth. of City of Atlanta v. Jefferson*, 223 Ga. App. 60, 64 (476 SE2d 831) (1996) (Beasley, J., concurring). Under these circumstances, the trial court did not err when it concluded that plaintiff was entitled to summary judgment on the specific issue of whether defendants' failure to provide such a call system or device was a breach of their duty to Mr. Kaapa, thus amounting to negligence per se. Id. at 61 (1) (a city housing authority "was obligated to ensure

9

that all dwellings approved . . . for Section 8 participation complied with" local ordinances, including one requiring the installation of fire alarms); see also *Gordon v. Fleeman*, 298 Ga. App. 662, 666-667 (1) (680 SE2d 684) (2009) (evidence authorized a finding that a landlord breached a duty to tenants by failing to install smoke detectors).

2. Defendants also argue that their motion for summary judgment should have been granted on the issues of (a) causation and (b) punitive damages. Again, we disagree.

(a) As the authorities cited above make clear, whether the lack of an emergency call system actually "delayed [Mr. Kaapa's] rescue and contributed to his injuries is a jury question." *Jefferson*, 223 Ga. App. at 62 (2) (although the issues of duty and breach were properly determined in a plaintiff's favor as a matter of law, the question of whether the absence of a smoke detector caused a tenant's death was for the jury to decide). There is evidence in the record that had the mandatory emergency call system been provided to Mr. Kaapa, it is likely that "[he] would have been rescued sooner, thereby avoiding or lessening the extent of his injuries." Id. The trial court did not err when it denied defendants' motion for summary judgment on this ground. Id.

(b) Under OCGA § 51-12-5.1 (b),

10

> [p]unitive damages may be awarded only in such tort actions in which it is proven by *clear and convincing evidence* that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that *entire want of care which would raise the presumption of conscious indifference to consequences*.

(Emphasis supplied.) A party acts with "conscious indifference to consequences" where it acts with a knowing or wilful disregard of the rights of another. *E-Z Serve Convenience Stores v. Crowell*, 244 Ga. App. 43, 46 (1) (c) (535 SE2d 16) (2008). See also *Hoffman v. Wells*, 260 Ga. 588, 588 (1) (397 SE2d 696) (1990) (an award of punitive damages may be authorized even in the absence of "[w]ilful and intentional misconduct").

Mercy has cited no law (apart from its quotation of the statute) and made no citation to the record in support of its bald assertion that there is no evidence authorizing a presumption of defendants' conscious indifference to consequences. On the contrary, this record includes evidence that Mercy, knowing that it was required to provide its residents with an emergency call device, not only failed to do so but also gave its residents the unauthorized and illusory option of waiving their right to that device in writing (a waiver which Mr. Kaapa never executed). These circumstances, taken together, raise a presumption of Mercy's conscious indifference

11

to the consequences of not providing an emergency device such that a jury could find by clear and convincing evidence that this plaintiff was entitled to punitive damages. See *Hoffman*, 260 Ga. at 588-589 (1) (doctor's repeated failure to correct diagnostic error showed "such a lack of care as to rise to a conscious indifference to consequences"); *Fowler v. Smith*, 237 Ga. App. 841, 843 (2) (516 SE2d 845) (1999) (truck driver's violation of federal safety regulations by stopping in an interstate's center lane for 35 minutes without turning on his lights or putting out warning devices authorized the denial of summary judgment on the issue of punitive damages). Compare *Wardlaw v. Ivey*, 297 Ga. App. 240, 243 (1) (676 SE2d 858) (2009) (a worker's violation of an ordinance by cutting down a tree without obtaining a permit where that tree was later hit by plaintiff motorist did not show conscious indifference to consequences for purposes of OCGA § 51-12-5.1 (b) because the ordinance was not related to safety procedures).

3. Defendants also assert, without citation to the record, that the trial court erred in denying summary judgment for Mercy Housing, Inc. given the fact that that entity was allegedly improperly named as a defendant. Again, we disagree.

There is no question raised in this case concerning Mercy Housing, Inc.'s capacity to defend the claims against it. Thus, that is not the issue before us. Rather,

the issue for us to decide is whether there is any evidence in the record creating a genuine issue of material fact in support of plaintiff's claim against Mercy Housing, Inc. In this regard, the record shows that the person who signed the contract for the complex's EPS system was a Mercy Housing, Inc. employee; that Mercy Housing, Inc. (along with the other defendants) was responsible for providing the EPS system to each resident; and that all three defendants, through the testimony of their corporate representative who was designated to testify on behalf of each of them, admitted their violations of HUD regulations by failing to provide residents with an EPS. Under these circumstances, Mercy Housing, Inc. has not shown error in the trial court's denial of its motion for summary judgment.

*Judgment affirmed. Rickman, C.J., and Barnes, P. J., concur*.

13