**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

November 3, 2023

# In the Court of Appeals of Georgia

A23A0883. PENNINGTON et al. v. BRIDGE SENIOR LIVING, LLC et al.

DOYLE, Presiding Judge.

Patti Pennington, individually and as administrator of the estate of her deceased husband, brought this premises liability action to recover damages after her husband tripped and fell on an uneven pavement seam near the entrance to their assisted living facility. The trial court granted summary judgment to the defendants on the ground that they lacked superior knowledge of the hazard, and Pennington appeals. Because the undisputed evidence shows that the hazard was a commonly occurring open and obvious static condition, we affirm.

Viewed in the light most favorable to Pennington as the non-movant,[1] the record shows that she and her husband moved into Somerby Sandy Springs, an assisted living facility, in January 2018. The facility had been built about a year earlier, and its main entrance had a hotel-style passenger loading area beneath a covered portico. When the couple moved in, Pennington's husband, Dr. Edward Earl Pennington, was 79 years old and had various health problems, though he was independently ambulatory. One evening in April 2020, Pennington and her husband drove to a local restaurant, then returned to Somerby. They exited their car and walked across the parking lot toward the facility's main entrance. As Pennington's husband crossed the seam between the asphalt driveway and the concrete pavement at the portico entrance, he tripped and fell, incurring serious injuries that led to his death several days later. According to Pennington, despite living there for more than two years, she only used the area for loading and unloading when she was by herself,

---

[1] See *D'Elia v. Phillips Edison & Co.*, 354 Ga. App. 696, 697 (839 SE2d 721) (2020) (in reviewing a trial court's grant of summary judgment, "we apply a de novo standard of review, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant") (citation and punctuation omitted).

and she had never traversed that pavement seam on foot because, "There is no reason to. There is a sidewalk which is covered."[2]

Pennington filed a premises liability action against Somerby's owner, manager, and director (collectively, "Somerby"), alleging that her husband's injuries had been caused by "an unmarked, uneven, raised change in the pavement." Asserting claims for negligence and negligence per se, the complaint alleged that Somerby knew or should have known about this height differential, which violated multiple applicable codes and standards, but neither repaired it nor warned residents of it.

Pennington engaged Richard Rice, a licensed professional and structural engineer, to "review the evidence" and "determine whether or not any codes or standards were violated that would have caused [the decedent] to trip and fall." Rice measured a maximum height discrepancy of seven-sixteenths of an inch between the asphalt pavement and concrete slab at the seam. According to Rice, codes and standards applicable under Georgia law to assisted living facilities are meant to protect "those who have ambulatory problems" and prohibit changes in level that are

---

[2] There is no evidence in the record as to whether Dr. Pennington had ever traversed that area of the driveway before he fell.

3

greater than one-fourth of an inch at accessible routes and means of egress.[3] Rice testified that the seam between the two surfaces was clearly visible, but the height differential was not discernible to the average person crossing the seam because "[t]hey're not looking for it." Rice concluded that the two surfaces were level and code-compliant when constructed, but the asphalt later settled at a lower level than the concrete as the pavement subgrade consolidated. Rice further opined that the height discrepancy had existed "for quite an amount of time."

Pennington also obtained the affidavit of a former Somerby employee who stated that in 2019, she "tripped on an unlevel part of the concrete near the entrance to" the facility. The former employee averred that she had told some co-workers what happened "because [she] was concerned that elderly people who live at Somerby might trip on the same place where [she] had tripped, and get injured." According to

---

[3] Specifically, Rice cited the Georgia State Minimum Fire Safety Standards, which in turn adopt the National Fire Protection Association's Life Safety Code. See Ga. Comp. R. & Regs., r. 120-3-3-.02 (73). That code provides that "[w]alking surfaces in the means of egress" at residential boarding facilities may not include "[a]brupt changes in elevation . . . . exceed[ing] 1/4 in." Rice also cited the State Minimum Accessibility Standards, which provide that "[c]overed multifamily dwellings" must meet the "2003 edition of the ANSI A117.1 standard entitled 'Accessible and Usable Buildings and Facilities[.]'" Ga. Comp. R. & Regs., r. 120-3-20.04 (1). Under that standard, vertical changes in the level of a floor surface cannot exceed one-fourth of an inch. For the purposes of summary judgment, Somerby does not challenge the applicability of these standards.

4

the former employee, she later learned that she had tripped in "the same spot" where the decedent had fallen. The former employee declined to identify which co-workers she told about her fall,[4] and Somerby's corporate representative testified that the former employee "never reported this incident" and that Somerby has no documentation of it.

Somerby moved for summary judgment, arguing among other things that it lacked superior knowledge of the pavement defect over which the decedent tripped. The trial court granted Somerby's motion, ruling that the defect was a static condition of which Dr. Pennington had equal knowledge, and this knowledge prohibited recovery even assuming that the seam was a building code violation. Pennington appeals.

Pennington argues that the trial court erred by granting Somerby's motion because routine issues of premises liability should not be adjudicated summarily and

---

[4] On motion by Somerby, the trial court struck as inadmissible hearsay a paragraph from the former employee's affidavit recounting what her co-workers had told Pennington, and Pennington does not challenge that ruling here.

there was evidence that Somerby had superior knowledge of the defect.[5] Based on the

record in this case, we disagree.

Under OCGA § 51-3-1,

> [w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

To prevail on a premises liability claim, the plaintiff must show "(1) that the

defendant had actual or constructive knowledge of the hazard; and (2) that the

[injured party] lacked knowledge of the hazard despite the exercise of ordinary care

due to actions or conditions within the control of the owner/occupier."[6] Therefore,

> the fundamental basis for an owner or occupier's liability is that party's superior knowledge of the hazard encountered by the plaintiff. *In other words, a plaintiff is not entitled to recovery if the undisputed evidence*

---

[5] Pennington's appellate brief asserts four enumerations of error, each one challenging the grant of summary judgment based on premises liability principles. Because the enumerations are inter-related and address the same dispositive issue, we do not address them separately.

[6] *North Fulton Community Charities v. Goodstein*, 367 Ga. App. 576, 581 (1) (556 SE2d 867) (2023).

6

*[plainly] demonstrates that the plaintiff's knowledge of the hazard was equal to or greater than that of the defendant.*[7]

That is the case here.

> [A]n invitee is not entitled to an absolutely smooth or level way of travel. It is common knowledge that small cracks, holes[,] and uneven spots often develop in pavement; and it has been held that where there is nothing to obstruct or interfere with one's ability to see such a static defect, the owner or occupier of the premises is justified in assuming that a visitor[8] will see it and realize the risk involved.[9]

It is undisputed in this case that the particular hazard was a slightly raised seam between asphalt and concrete pavement that commonly occurs along joints in any paved surface. This was not a function of the design of the driveway, nor was it unique to this area; rather, all paved surfaces have joints where they meet, and a slight

---

[7] (Punctuation omitted; emphasis supplied.) *D'Elia*, 354 Ga. App. at 698, quoting *Cherokee Main Street, LLC v. Ragan*, 345 Ga. App. 405, 407 (813 SE2d 397) (2018).

[8] We note that the Penningtons were not visitors of the senior living facility but long-term residents, having lived there for over two years at the time of the fall.

[9] (Citations and punctuation omitted.) *James v. Sirmans*, 299 Ga. App. 262, 263 (683 SE2d 354) (2009). "[P]rior traversal of the area in which [the injured party] fell is not required to find that the area was an open and obvious static condition." *D'Elia*, 354 Ga. App. at 700, n.3, citing *City of Brunswick v. Smith*, 350 Ga. App. 501, 504 (829 SE2d 781) (2019).

irregularity is a common, readily observable, static condition. The hazard presented

by such a seam is not something a plaintiff lacks knowledge of when approaching.

The testimony of Pennington's expert, Rice, does not change this. First, Rice

testified in a conclusive manner that "the average person is not going to see [it

because] they're not looking for it." But this is a legal conclusion as to the ultimate

issue and not sufficient to create a material issue of fact as to the character of the

static condition as presented in Rice's photos of the scene and objective descriptions

and measurements.[10]

---

[10] See *Rayburn v. Ga. Power Co.*, 284 Ga. App. 131, 139 (3) (643 SE2d 385) (2007) ("[I]t is well established that an expert witness may not state a legal conclusion as to the ultimate issue.") (punctuation omitted). And we note that at least one part of the expert's testimony is incorrect. He testified that building code requirements allow a 1/4 inch misalignment, and one measurement of 11/32 misalignment was "more than twice the allowable" distance, based on his assertion that 1/4 of an inch is 4/32 . This is mathematically incorrect: 1/4th of an inch is 8/32, so the misalignment (11/32) he identified in this portion of his deposition was 3/32 of an inch beyond the code specification, not 1/4. But this discussion is of no moment — the expert opined that the driveway was originally built to code and had merely settled over time. The present alleged deviation from the building code does not change the fact that the driveway seam was a common, ordinary, and patently obvious feature of the driveway, and persons such as Dr. Pennington are deemed to have equal knowledge that pavement develops small cracks, holes, and uneven spots. "[N]egligence per se is not liability per se. 'Negligence' . . . is in itself (only) one of the essential elements prerequisite to [liability] in a given case. Even if [a plaintiff can] show that [a hazard] constituted negligence per se as a violation of the building code, [he can] be precluded from recovering because of the equal knowledge rule." (punctuation omitted.) *Yasinsac v. Colonial Oil Properties.*, 246 Ga. App. 484, 486

Further, Rice testified that the seam between the asphalt and concrete violated various building and safety codes. Therefore, Pennington argues that a jury question exists despite the open and obvious nature of the seam. But the alleged building code violation does not require reversal,[11] based on the particular hazard in this case. For example, cases cited by Pennington hold that building code violations, particularly by landlords, typically present jury questions even as to equal knowledge because "the facts supporting these defenses will not be plain or indisputable. . . [A] tenant who is aware of a condition that violates a housing code does not necessarily appreciate the danger presented — a danger that has been studied and regulated by

(3) (541 SE2d 109) (2000). See *Gilchrist v. Meldi Sub, LLC*, 363 Ga. App. 53, 60 (2) (870 SE2d 541) (2022) ("[E]ven assuming that Gilchrist could otherwise establish negligence per se based on a violation of the ADA, that claim still fails as a matter of law under the equal knowledge rule.") (footnote omitted); *McLemore v. Genuine Parts Co.*, 313 Ga. App. 641, 644-645 (722 SE2d 366) (2012), (holding that despite an alleged building code violation "even if [the defendant] had knowledge of the allegedly hazardous condition of the curb, the [plaintiffs] cannot recover if [the injured party] had equal or superior knowledge or if her ability to see the curb was unimpeded"); *Jordan v. Bennett*, 312 Ga. App. 838, 840, n. 2 (720 SE2d 301) (2011) ("[A]ssuming, without deciding, that . . . [the defendant] was negligent per se in failing to comply with the building code, this does not impose liability where the owner lacks superior knowledge of the hazard.").

[11] See, e.g., *Parke Towne N. Apts., LLC v. Castro*, 349 Ga. App. 692 (824 SE2d 730) (2019); *Bastien v. Metro. Park Lake Assocs.*, 209 Ga. App. 881 (434 SE2d 736) (1993); *Housing Auth. v. Jefferson*, 223 Ga. App. 60 (476 SE2d 831) (1996) (physical precedent only).

9

a governing body."[12] This makes sense when a plaintiff with equal knowledge cannot

necessarily appreciate specific hazards presented by things such as faulty wiring, or

an improper railing height, or the lack of certain safety features required by code. But

the defect in this case is not that type of hazard. As demonstrated by the photos taken

of the area and the undisputed descriptions of the area, it is a *plainly visible and*

*routinely occurring* seam between the concrete and asphalt, highlighted by the change

in color between the two surfaces.[13] Taking into account all of these conditions at the

time of the fall, this minor "irregularit[y] and trifling defect[]"[14] was not a cause for

recovery, and the testimony of Pennington's expert does not create a genuine issue

---

[12] *Castro*, 349 Ga. App. at 695 (3)

[13] In this way, the hazard in this case differs from that addressed in *Cocklin v. JC Penney Corp.*, 296 Ga. App. 179 (674 SE2d 48) (2009). In *Cocklin*, the hazard was particular to the store and occurred "where the floor transitions from a lower, horizontal surface composed of vinyl tiles to a higher, horizontal surface composed of ceramic tiles. These two surfaces are separated by a vertical transition piece, or threshold, that arises from the lower surface to the higher surface at a 90 degree angle. Most of the vertical transition piece is covered by a brown strip. But above the brown strip is an exposed edge of ceramic tile about a quarter of an inch in height. This ceramic tile extends slightly beyond the vertical surface of the transition piece leaving a small crevice or lip." Id. at 180. Such a construction differs from the hazard here, which was a minor lip routinely occurring at seams across any given paved area.

[14] (Punctuation omitted.) *McLemore*, 313 Ga. App. at 644.

10

as to the above facts, which are dispositive.[15] Therefore, the *material* factual evidence "is plain, palpable, and undisputed" such that summary judgment is appropriate.[16]

Pennington also relies on evidence that a Somerby employee had tripped in the area and had spoken to other staff members about it. But this does not support an inference that Somerby's knowledge was *superior* to Dr. Pennington's because, once again, the seam and lip were not only open and obvious, but commonly found in paved surfaces: "There is no duty to warn of the obvious,"[17] because knowledge of such conditions is presumed. Accordingly, based on the particular nature of the driveway seam at issue in this case, the record fails to support an inference that Somerby had superior knowledge of the alleged hazard it presented.

Finally, we note that after the briefing in this case, the Supreme Court of Georgia published a writing by Justice Pinson, joined by Presiding Justice Peterson, concurring in an order granting the parties' motion to withdraw the appeal in *Givens*

---

[15] See id. at 644-645 (holding that a plaintiff had equal knowledge as a matter of law based on plain view of static defect). See also *D'Elia*, 354 Ga. App. at 699-700 (same).

[16] *Gutierrez v. Six Flags Over Ga. II*, 367 Ga. App. 539, 541 (1) (887 SE2d 352) (2023).

[17] (Punctuation omitted.) *Pirkle v. Robson Crossing, LLC*, 272 Ga. App. 259, 262 (612 SE2d 83) (2005).

*v. Coral Hospitality-GA, LLC*.[18] In the concurrence, Justice Pinson questioned the viability of much of the case law that has developed around hazards deemed "open and obvious" or in plain view. He noted that under the principles outlined in *Robinson v. Kroger*,[19] the seminal premises liability case in Georgia, issues regarding "how vigilant patrons must be for their own safety in various settings, and where customers should be held responsible for looking or not looking are all questions that, in general, must be answered by juries as a matter of fact rather than by judges as a matter of law."[20] In light of this, he wrote, "the question whether any given hazard was sufficiently obvious is a question whether the invitee reasonably could have seen and avoided it in the exercise of ordinary care. And in tort law, questions about

---

[18] Case No. S22G1043 (decided September 14, 2023). The writing is, of course, not binding precedent, nor does it purport to be.

[19] 268 Ga. 735, 748 (2) (B) (493 SE2d 403) (1997) ("[W]e remind members of the judiciary that the 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted only when the evidence is plain, palpable, and undisputed.").

[20] *Givens* at *3, quoting *American Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 445 (2) (679 SE2d 25) (2009).

12

reasonableness under the circumstances are quintessentially questions for the factfinder."[21]

Justice Pinson's critique is well taken. Nevertheless, it does not purport to abandon the principle reiterated in *Robinson* that summary judgment remains appropriate "where the evidence is plain, palpable[,] and undisputable."[22] The facts of this case present such a scenario. It is a different matter to summarily decide how vigilant a store patron must be to scan his path for foreign obstacles or substances, or how vigilant an invitee must be to avoid a hazard or defect that is not a regular part of a paved surface. But in this case, the seam between the asphalt driveway and the concrete pad is a commonly occurring, ordinary, and permanent part of the built environment that is unobstructed and obvious to anyone within sight of it. In this sense, the hazard presented by a slight lip at the seam is an obvious feature of the driveway in a location where it is customarily found, much in the same way that a sidewalk curb is. Therefore, in light of the specific nature of the alleged hazard in this case, the trial court correctly granted summary judgment to the defendants.

---

[21] (Punctuation omitted.) *Givens* at *3-*4, quoting *Robinson*, 268 at 748 (2) (b).

[22] *Robinson*, 268 Ga. at 739 (1).

*Judgment affirmed. Gobeil, J., concurs fully and specially. Senior Judge C. Andrew Fuller dissents.*

A23A0883.  PENNINGTON et al. v. BRIDGE SENIOR LIVING,
   LLC et al.


GOBEIL, Judge, concurring fully and specially.

At the outset, this is a case of a tragic accident resulting in the loss of life. And yet, we must serve the difficult role of deciding whether this case *legally* should proceed to a jury, regardless of the existence of sympathetic facts. Though the parties (and the dissent) present thoughtful and compelling perspectives, I ultimately fully concur with the majority given the open and obvious (and indeed prevalent) nature of the specific hazard. Perhaps the Supreme Court of Georgia will provide further guidance on this evolving area of premises liability jurisprudence, including the

import of parties' respective knowledge in cases involving such open, obvious, and

expected hazards and on their respective duties to navigate or address them.

A23A0883. PENNINGTON et al. v. BRIDGE SENIOR LIVING,

LLC et al.

FULLER, SENIOR JUDGE, dissenting.

Patti Pennington presented evidence that her 81-year-old husband died after tripping over a pavement seam at their assisted living facility that was almost twice the allowable height discrepancy for walking surfaces at such facilities. There also was evidence that Somerby did not regularly inspect the premises for such defects despite marketing its services to older clientele with disabilities. Given this evidence, I believe questions of fact as to Somerby's superior knowledge preclude summary judgment. I therefore dissent.

The majority concludes that Pennington's decedent had equal knowledge of the defect in the pavement seam, as a matter of law, because it was "a commonly occurring open and obvious static condition." However, Pennington's expert, Rice, testified that an average pedestrian traversing the area would not discern the height differential at the seam because "[t]hey're not looking for it." During his deposition, Rice emphasized that although his professional engineering eye is trained to spot such defects, they are not noticeable to the average person, let alone "somebody living in a personal care facility."

The majority dismisses this testimony as a legal conclusion as to the ultimate issue, but it is not. As the Supreme Court has reminded us, whether a defect is open and obvious generally is a fact question. See *American Multi-Cinema v. Brown*, 285 Ga. 442, 445 (2) (679 SE2d 25) (2009) ("issues such as how closely a particular retailer should monitor its premises and approaches, what retailers should know about the property's condition at any given time, how vigilant patrons must be for their own safety in various settings, and where customers should be held responsible for looking or not looking are all questions that, in general, must be answered by juries as a matter of fact rather than by judges as a matter of law") (citation and punctuation omitted). And expert witnesses such as Rice "may testify to an ultimate issue of fact."

2

*Fireman's Fund Ins. Co. v. Holder Constr. Group*, 362 Ga. App. 367, 374 (1) (b) (868 SE2d 485) (2022) (citation and punctuation omitted). Rice's testimony that the defect in question was not open and obvious precludes finding, as a matter of law, that the decedent had constructive knowledge of it.[1]

Further, contrary to the majority's characterization, there was evidence that this defect was not merely a "commonly occurring, ordinary, and permanent part of the built environment." The decedent did not trip on a public sidewalk, in a grocery store parking lot, or at a private residence; he tripped at the entryway to his nursing home. Rice testified that the height discrepancy at that spot violated multiple regulations governing walking surfaces at assisted living facilities. According to Rice, these regulations are meant to protect "folks that have accessibility problems, that have

---

[1] Indeed, we routinely reverse grants of summary judgment where there are factual disputes as to whether defects in walking surfaces were open and obvious. See, e.g., *Landrum v. Enmark Stations*, 310 Ga. App. 161, 165 (2) (712 SE2d 585) (2011) (reversing summary judgment where a gas station patron tripped over "an uneven crack in the surface of the paved parking lot"); *Brewer v. Atlanta South 75*, 288 Ga. App. 809, 810 (655 SE2d 631) (2007) (reversing summary judgment where a truck stop customer tripped over a height differential at a fuel island because the defendant "produced no evidence to disprove [the plaintiff's] testimony that his properly parked truck prevented him from seeing the height differential"); *Christensen v. Overseas Partners Capital*, 249 Ga. App. 827, 828 (549 SE2d 784) (2001) (reversing summary judgment where the plaintiff tripped over a spot in a parking deck that was "sunken in" between one and one-half to two inches and the plaintiff testified that the depression was not noticeable from her direction of travel).

3

vision problems. That's what these codes are written for. . . . [T]hey're not written for me and you. They're . . . written for those who have ambulatory problems." The record also shows that Somerby intentionally marketed its facility as accessible to older people with physical handicaps. Having specifically sought to profit from clientele with mobility challenges, Somerby was not free to ignore the regulations designed to protect them.

I find our decision in *Cocklin v. JC Penney Corp.*, 296 Ga. App. 179 (674 SE2d 48) (2009), to be particularly instructive here. There, the plaintiff filed a premises liability lawsuit after tripping over a quarter-inch lip at a transition point between two flooring surfaces while walking into the defendant's hair salon. Id. at 180. The plaintiff was 76 years old, and "[t]he hair salon's clientele [was] largely composed of women in her age category." Id. The plaintiff presented expert testimony that the floor should transition from a lower to a higher elevation through a gradual slope and that the lip over which the plaintiff tripped "was not readily visible from a normal visual height." Id. at 180-181. We reversed the trial court's grant of summary judgment to the defendant, ruling that the defendant had presumptive notice of the defect arising from its "duty to exercise ordinary care in inspecting the premises to discover possible dangerous conditions of which the owner/occupier does

4

not have actual knowledge, and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises." Id. at 182-183 (citation and punctuation omitted). The facts here present an even stronger case for reversal, as Rice's expert opinion was based on Somerby's violation of codified safety standards designed to protect people like the decedent — a factor not mentioned in *Cocklin*.

The majority distinguishes *Cocklin* on the basis that the height discrepancy in that case was caused by an exposed edge of ceramic tile at a vertical transition piece, rather than by a pavement seam. See 296 Ga. App. at 180. In my view, however, this difference in construction materials does not matter here. What matters is that we reversed a grant of summary judgment based on an expert's testimony that a quarter-inch height discrepancy in a walking path frequented by older patrons was not readily apparent. The same result should apply here.

Because there is evidence that the decedent lacked constructive knowledge of the hazard, the next step in the analysis is whether Somerby had such knowledge. See *North Fulton Community Charities v. Goodstein*, 367 Ga. App. 576, 581 (1) (556 SE2d 867) (2023) (the basis of the proprietor's liability in a static condition case is its superior knowledge of the hazard). One method of establishing a proprietor's

constructive knowledge is by showing that it "failed to exercise reasonable care in inspecting the premises." *Newell v. Great Atlantic & Pacific Tea Co.*, 222 Ga. App. 884, 886 (2) (476 SE2d 631) (1996). As the majority notes, Rice testified that the defect likely had existed for "quite an amount of time." Somerby's corporate representative testified generally that the facility had a "director of engineering" responsible for making "regular rounds in the community" to check for potential hazards, but there was no evidence about the scope or frequency of those inspections or that any such inspection occurred before the decedent's fall. In the absence of any evidence that Somerby actually inspected the premises, a jury could conclude that it had constructive knowledge of the defect. See *RSFPITTSGA, LLC v. Schiess*, 357 Ga. App. 505, 508 (2) (b) (851 SE2d 135) (2020) ("The owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident.") (citation and punctuation omitted); *Perkins v. Val D'Aosta Co.*, 305 Ga. App. 126, 129 (699 SE2d 380) (2010) (proprietor "was on constructive notice of what a reasonable inspection would have revealed about the [alleged defect]").

In sum, Pennington presented evidence from which a jury could conclude that Somerby is chargeable with superior knowledge of a hard-to-see tripping hazard in

6

an entryway at its assisted living facility that violated applicable safety regulations and led to her husband's death. Therefore, this is not one of those "plain, palpable, and undisputed" cases in which summary judgment is warranted. *American Multi-Cinema*, 285 Ga. at 445 (2) (punctuation omitted).